No. 24-5220

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

STATE OF TENNESSEE,

PLAINTIFF-APPELLANT,

V.

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN
SERVICES, XAVIER BECERRA, in his official capacity,
OFFICE OF POPULATION AFFAIRS,
and JESSICA S. MARCELLA, in her official capacity,

DEFENDANTS-APPELLEES.

On Appeal from the United States District Court
for the Eastern District of Tennessee,
Case No. 3:23-cv-384

## BRIEF OF *AMICUS CURIAE*
## ETHICS AND PUBLIC POLICY CENTER
## IN SUPPORT OF PLAINTIFF-APPELLANT
## AND REVERSAL

ERIC N. KNIFFIN
RACHEL N. MORRISON
ETHICS & PUBLIC POLICY CENTER
1730 M Street, N.W.
 Suite 910
Washington, DC 20036
(202) 682-1200
ekniffin@eppc.org

*Counsel for* Amicus Curiae

April 12, 2024

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Sixth Circuit Rule 26.1(a), Amicus Curiae Ethics and Public Policy Center is a non-profit 501(c)(3) organization and has no corporate parent and is not owned in whole or in part by any publicly held corporation.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT.............................................i

TABLE OF AUTHORITIES...................................................................iii

STATEMENT OF INTEREST OF *AMICUS CURIAE*...........................1

INTRODUCTION AND SUMMARY OF THE ARGUMENT...................1

ARGUMENT......................................................................................6

The Biden administration is weaponizing federal law to unlawfully promote abortion and interfere with state abortion laws contrary to the Supreme Court's direction in *Dobbs*. .................6

    A.  Turning Title X into an Abortion Counseling and Referral Mandate....................................................................7

    B.  Turning Taxpayer Dollars into Abortion Funds....................10

    C.  Turning Hospital Emergency Rooms into Abortion Clinics...14

    D.  Turning VA Hospitals into Abortion Clinics ..........................17

    E.  Turning the U.S. Postal Service into a Delivery Service for Abortion Drugs.........................................................20

    F.  Turning Pharmacies into Abortion Drug Dispensaries .........24

    G.  Turning HIPAA's Privacy Protections into a Shield Against Laws Regulating Abortion........................................28

    H.  Turning Workplace Pregnancy Accommodations into an Abortion Mandate ..................................................32

CONCLUSION .................................................................................35

# TABLE OF AUTHORITIES

## Cases

*Danco Labs. v. All. for Hippocratic Med.*,
143 S. Ct. 1075 (2023)................................................................24

*Dobbs v. Jackson Women's Health Organization*,
597 U.S. 215 (2022)..........................................................2, 3, 6

*Fin. Oversight & Mgmt. Bd. for P.R. v. Aurelius Inv., LLC*,
140 S. Ct. 1649 (2020)..............................................................19

*NFIB v. OSHA*,
595 U.S. 109 (2022)....................................................................6

*Oklahoma v. U.S. Dep't Health & Human Servs.*,
No. 23-CV-01052-HE (W.D. Okla.)..........................................9

*Texas v. Becerra*,
89 F.4th 529 (5th Cir. 2024).............................................15, 16

*Texas v. U.S. Dep't of Health & Hum. Servs.*,
No. 23-CV-00022-DC, 2023 WL 4629168 (W.D. Tex. July 12,
2023). .........................................................................................27

*West Virginia v. EPA*,
597 U.S. 697 (2022)..............................................................3, 6

## Statutes

1 U.S.C. § 8 ................................................................................31

10 U.S.C. § 1093.........................................................................12

18 U.S.C. § 13 ............................................................................19

18 U.S.C. § 1461...................................................................21, 22

18 U.S.C. § 1462.........................................................................21

18 U.S.C. § 1841 ................................................................30

18 U.S.C. § 2261 ................................................................30

20 U.S.C. § 1688 ................................................................26

26 U.S.C. § 9802 ................................................................31

29 U.S.C. § 1182 ................................................................32

29 U.S.C. § 794 .................................................................25

42 U.S.C. § 1395dd ......................................................15, 16

42 U.S.C. § 1395ss ..............................................................32

42 U.S.C. § 18023 ...............................................................26

42 U.S.C. § 18116 ...............................................................25

42 U.S.C. § 2000ff ...............................................................32

42 U.S.C. § 2000gg .............................................................32

42 U.S.C. § 300a-6 ................................................................2

42 U.S.C. § 300gg ...............................................................32

5 U.S.C. § 533 ....................................................................18

Pub. L. No. 102-585, 106 Stat. 4943 (1992) ...........................18

Pub. L. No. 104-191, 110 Stat. 1936 (1996) ...........................28

Pub. L. No. 110-233, 122 Stat. 881 (2008) .............................31

Pub. L. No. 111-117, 123 Stat. 3034 (2009) ...........................10

Pub. L. No. 117-328, 136 Stat. 4908 (2022) .......................26, 32

## Other Authorities

168 Cong. Rec. S7050 (daily ed. Dec. 8, 2022) .......................................... 33

Application of the Assimilative Crimes Act to Conduct of Fed.
   Emps. Authorized by Fed. L., 46 Op. O.L.C. __ (Aug. 12, 2022) ......... 19

Application of the Hyde Amend. to the Provision of Transp. for
   Women Seeking Abortions, 46 Op. O.L.C. ___ (Sept. 27, 2022) .......... 11

CMS, *Emergency Medical Treatment & Labor Act (EMTALA)* (last
   modified Jan. 5, 2024) ............................................................................. 15

FDA, REMS Single Shared System for Mifepristone 200 mg (Jan.
   2023) ........................................................................................................ 22

*Induce*, Merriam-Webster.com (last visited Feb. 28, 2024) .................... 29

Intergovernmental Immunity for the Dep't of Veterans Affs. & Its
   Emps. When Providing Certain Abortion Servs, 46 Op. O.L.C. ___
   (Sept. 21, 2022) ...................................................................................... 19

Jasmine Wright, HHS Secretary Says 'Everything Is on the Table'
   in Response to Medication Abortion Ruling, CNN (Apr. 9, 2023,
   7:21 PM) .................................................................................................. 24

Laura Huss, Farah Diaz-Tello, Colleen Samari, *Self-Care,
   Criminalized: August 2022 Preliminary Findings*, If When How
   (Aug. 2022) .............................................................................................. 31

Letter from Jessica Marcella, Deputy Assistant Sec'y for Population
   Affs., Off. of Population Affs., Off. of the Assistant Sec'y for
   Health, HHS, et al., to Yoshie Darnall, Program Dir., Tenn. Dep't
   of Health, et al., on Decision not to Fund Continuation Award
   (March 20, 2023) ....................................................................................... 9

Letter from Joseph R. Biden, Jr., U.S. Sen., to Michael Gregg (April
   7, 1994) ................................................................................................... 11

Letter from Marco Rubio, U.S. Sen., to Kiran Ahuja, Dir., OPM
   (July 5, 2022) .......................................................................................... 11

Letter from Xavier Becerra, Sec'y, HHS, and Chiquita Brooks-LaSure, Adm'r, CMS, HHS to Governors (Aug. 26, 2022) ................. 13

Letter from Xavier Becerra, Sec'y, HHS, to Health Care Providers (July 11, 2022) ...................................................... 15

Memorandum from CMS, HHS, on Reinforcement of EMTALA Obligations Specific to Patients Who Are Pregnant or Are Experiencing Pregnancy Loss (July 11, 2022) (rev. Aug. 25, 2022) ......... 15

Memorandum from Lloyd Austin, Secretary of Def., DOD, to Senior Pentagon Leadership, Commanders of the Combatant Commands, Def. Agency and DOD Field Activity Directors, on Ensuring Access to Reprod. Health Care (Oct. 20, 2022) ................... 12

Michael Holzapfel, *The Right to Live, the Right to Choose, and the Unborn Victims of Violence Act*, 18 J. Contemp. Health L. & Pol'y 431 (2002). ............................................... 30

Off. for Civ. Rts., HHS, *Conscience and Religious Nondiscrimination* (last reviewed Jan. 10, 2023) ............................ 10

Off. of Population Affairs, Off. of the Assistant Sec'y for Health, HHS, Title X Family Planning Program ................................ 7

OPM, *Availability of Sick Leave for Travel to Access Med. Care* (June 27, 2022) ...................................................... 11

Press Release, HHS, HHS Announces New Grants to Bolster Family Planner Provider Training (June 30, 2022) ........................... 7

Press Release, HHS, HHS Awards $256.6 Million to Expand and Restore Access to Equitable and Affordable Title X Family Planning Servs. Nationwide (Mar. 30, 2022) ....................... 8

Press Release, HHS, HHS Issues Guidance to the Nation's Retail Pharmacies Clarifying Their Obligations to Ensure Access to Comprehensive Reproductive Health Care Services (July 13, 2022) ................................................................ 25

Press Release, HHS, HHS Proposes Measures to Bolster Patient-Provider Confidentiality Around Reproductive Health Care (Apr. 12, 2023) .................................................................. 32

Press Release, HHS, HHS Releases Report Detailing Biden-Harris Admin. Efforts to Protect Reprod. Health Care Since Dobbs (Jan. 19, 2023) .................................................................. 8

Press Release, HHS, HHS Releases Report Detailing Biden-Harris Administration Efforts to Protect Reproductive Health Care Since Dobbs (Jan. 19, 2023) ................................................ 8

Press Release, HHS, HHS Secretary Becerra's Statement on Supreme Court Ruling in Dobbs v. Jackson Women's Health Organization (June 24, 2022) ......................................... 5, 21

Report, HHS, Marking the 50th Anniversary of Roe: Biden-Harris Admin. Efforts to Protect Reprod. Health Care (Jan. 19, 2023) ......... 23

White House, FACT SHEET: Biden-Harris Administration Announces Actions to Protect Patient Privacy at the Third Meeting of the Task Force on Reproductive Healthcare Access (Apr. 12, 2023) .......................................................... 9

White House, FACT SHEET: President Biden Announces Actions in Light of Today's Supreme Court Decision on Dobbs v. Jackson Women's Health Organization (June 24, 2022) ................................. 20

White House, FACT SHEET: President Biden to Sign Executive Order Protecting Access to Reproductive Health Care Services (July 8, 2022) .......................................................... 3, 12

White House, FACT SHEET: President Biden to Sign Memorandum on Ensuring Safe Access to Medication Abortion (Jan. 22, 2023) .......................................................... 20

White House, FACT SHEET: The Biden-Harris Administration's Record on Protecting Access to Medication Abortion (Apr. 12, 2023) .......................................................... 4, 26

White House, FACT SHEET: White House Task Force on Reproductive Healthcare Access Announces New Actions and Marks the 51st Anniversary of Roe v. Wade (Jan. 22, 2024) ............... 7

White House, *National Security Council* (last visited Feb. 28, 2024) .... 12

White House, Press Briefing by Press Sec'y Karine Jean-Pierre and NSC Coordinator for Strategic Communications John Kirby (July 17, 2023) ................................................................................. 13

White House, Remarks by President Biden Before Meeting with His Task Force on Reproductive Healthcare Access (Jan. 22, 2024) .......................................................................................... 3

White House, Remarks by President Biden on the Supreme Court's Decision on Affirmative Action Remarks (June 29, 2023) .................... 3

## Regulations

45 C.F.R. §164.512 ................................................................................ 28

EEOC, Regulations to Implement the Pregnant Workers Fairness Act,
88 Fed. Reg. 54,714 (Aug. 11, 2023) ..................................................... 34

HHS, HIPAA Priv. Rule to Support Reprod. Health Care Priv.,
88 Fed. Reg. 23,506 (Apr. 17, 2023) ................................... 28, 29, 30, 31

HHS, Strengthening Temp. Assistance for Needy Families (TANF) as a Safety Net and Work Program,
88 Fed. Reg. 67,697 (Oct. 2, 2023) ........................................................ 14

Presidential Memorandum, Further Efforts To Protect Access to Reproductive Healthcare Services,
88 Fed. Reg. 4895 (Jan. 26, 2023) ........................................................... 4

VA, Reprod. Health Servs.,
87 Fed. Reg. 55,287 (Sept. 9, 2022) ........................................... 17, 18, 20

## STATEMENT OF INTEREST OF *AMICUS CURIAE*[1]

The Ethics and Public Policy Center (EPPC) is a nonprofit research institution dedicated to applying the Judeo-Christian moral tradition to critical issues of public policy, law, culture, and politics. EPPC works to promote a culture of life in law and policy and to defend the dignity of the human being from conception to natural death. EPPC's HHS Accountability Project is dedicated to monitoring the U.S. Department of Health and Human Services (HHS). Project scholars write and submit public comments on HHS rulemaking—including for Title X—and urge HHS to follow the law and protect unborn human life.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

This case is about whether the U.S. Department of Health and Human Services (HHS) has legal authority to rescind Tennessee's Title X funding solely because the state will not counsel and refer for abortions that are illegal under state law. Title X—a federal program that funds state and private health care organizations offering voluntary family

---

[1] All parties received timely notice and consented to the filing of this brief. No party's counsel authored any part of this brief and no person other than *amicus* made a monetary contribution to fund its preparation or submission.

planning services—explicitly prohibits Title X funds from being used "in programs where abortion is a method of family planning." Public Health Services Act, 42 U.S.C. §300a-6.

In March 2022, HHS awarded Tennessee a five-year grant of Title X funds. Later that same year, HHS determined that Tennessee's Health Department was "the only agency in the state capable of administering Title X funds with integrity." Tenn. Br. 14 (cleaned up). But just a few months later, based entirely on the scope of abortion services provided in Tennessee's Title X program, HHS reversed course and rescinded Tennessee's grant of Title X funds ("the Rescindment").

What changed? The Biden administration adopted an abortion-at-all-costs agenda contrary to the Supreme Court's direction in *Dobbs v. Jackson Women's Health Organization* that the issue of abortion is returned "to the people and their elected representatives." 597 U.S. 215, 259 (2022).

As Tennessee's opening brief points out, "'those in the Executive Branch' increasingly seek 'to use pen-and-phone regulations as substitutes for laws passed by the people's representatives.'" Tenn. Br. 25 (quoting *West Virginia v. EPA*, 597 U.S. 697, 752-53 (2022) (Gorsuch,

J., concurring)). Here, HHS is interfering with Tennessee's sovereign interest in setting its on abortion laws by attempting to use rulemaking to unlawfully impose a spending condition on "a matter of great 'political significance,'" *id*. at 743 (quoting *NFIB v. OSHA*, 595 U.S. 109, 117 (2022)), and "great social significance and moral substance," *Dobbs*, 597 U.S. at 300. This spending condition is just another in a long list of politically motivated executive actions taken by the Biden administration post-*Dobbs* to impose the administration's abortion agenda by fiat.

Rather than wait for Congress to heed his call to codify *Roe* v. *Wade*, President Joe Biden "committed to doing everything in his power" to "protect access" to abortion.[2] He issued multiple statements and executive orders denouncing *Dobbs*—which he called "an extreme decision"[3] by "not a normal Court"[4]—and mandating access to abortion,

---

[2] White House, FACT SHEET: President Biden to Sign Executive Order Protecting Access to Reproductive Health Care Services (July 8, 2022), https://perma.cc/F5ZZ-XGL8.

[3] White House, Remarks by President Biden Before Meeting With His Task Force on Reproductive Healthcare Access (Jan. 22, 2024), https://perma.cc/N9KR-TKX9.

[4] White House, Remarks by President Biden on the Supreme Court's Decision on Affirmative Action (June 29, 2023), https://perma.cc/7XU8-3KL4.

even though there is no federal constitutional right to abortion and no federal statute (including Title X) contains a mandate to provide abortion.[5]

The very day *Dobbs* was issued, President Biden claimed the decision would result in "grave consequences" and announced "actions" his Administration would take in response.[6] Protecting access to abortion across state lines and to abortion drugs were the "two key priorities"[7] the President identified. He directed HHS Secretary Becerra to "identify all ways to ensure that mifepristone is as widely accessible as possible[,] ... including when prescribed through telehealth and sent by mail."[8]

---

[5] *E.g.*, Exec. Ord. No. 14,076, Protecting Access to Reprod. Healthcare Servs., 87 Fed. Reg. 42,053 (July 8, 2022); Exec. Ord. No. 14,079, Securing Access to Reprod. and Other Healthcare Servs., 87 Fed. Reg. 49,505 (Aug. 3, 2022); *see also* Presidential Mem., Further Efforts To Protect Access to Reprod. Healthcare Servs., 88 Fed. Reg. 4895 (Jan. 26, 2023) ("My Administration remains committed to supporting safe access to mifepristone[.]").

[6] White House, FACT SHEET: President Biden Announces Actions in Light of Today's Supreme Court Decision on Dobbs v. Jackson Women's Health Organization (June 24, 2022), https://perma.cc/66T6-BL87.

[7] White House, FACT SHEET: The Biden-Harris Administration's Record on Protecting Access to Medication Abortion (Apr. 12, 2023), https://perma.cc/78TT-3J2G.

[8] White House, FACT SHEET: President Biden Announces Actions in Light of Today's Supreme Court Decision on Dobbs v. Jackson Women's Health Organization (June 24, 2022), https://perma.cc/66T6-BL87.

The same day, Secretary Becerra announced HHS's "commitment to ensure every American has access to ... abortion" and promised to "double down and use every lever we have to protect access to abortion."[9] He directed "every part" of HHS "to do any and everything" to fulfill that commitment.[10]

At the President's direction, HHS and other federal agencies and unelected government officials began reinterpreting federal laws to advance the administration's pro-abortion political agenda. Never-before-found authority was conveniently discovered post-*Dobbs* in federal law—including in Title X and the 2021 Rule—that the administration claims allows the federal government to impose abortion mandates and preempt state laws protecting unborn human life. These novel applications of federal authority, such as the Rescindment, subvert states' sovereign interests in furthering legislatively enacted pro-life policies.

---

[9] Press Release, HHS, HHS Secretary Becerra's Statement on Supreme Court Ruling in Dobbs v. Jackson Women's Health Organization (June 24, 2022), https://perma.cc/89AZ-RFL4.

[10] *Id.*

The Rescindment is part of the Biden administration's pattern and practice, documented below, to unilaterally expand abortion access and preempt state abortion laws in violation of federal law and contrary to the Supreme Court's direction in *Dobbs*.

## ARGUMENT

**The Biden administration is weaponizing federal law to unlawfully promote abortion and interfere with state abortion laws contrary to the Supreme Court's direction in *Dobbs*.**

The Biden administration is weaponizing federal law on "a matter of great 'political significance.'" *West Virginia v. EPA*, 597 U.S. 697, 743 (2022) (Gorsuch, J., concurring) (quoting *NFIB v. OSHA*, 595 U.S. 109, 117 (2022)). The administration is using federal agencies such as HHS to sidestep the Supreme Court's direction in *Dobbs* and promote Biden's abortion-at-all-costs agenda without "the people and their elected representatives." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 259 (2022). As documented below, in the Biden administration's zeal to protect and expand access to abortion, the administration ignores federal limits on its authority and disregards states' sovereign interest in setting their own abortion laws. The Rescindment is just one example.

## A.     Turning Title X into an Abortion Counseling and Referral Mandate

Less than a week after *Dobbs*, HHS announced nearly $3 million in new Title X family planning grants to "increase training and technical assistance to address the challenges that the recent Supreme Court decision may have on their Title X Family planning service delivery."[11] A White House Fact Sheet on the 51st Anniversary of *Roe v. Wade* identified the $263 million HHS awarded to Title X clinics in 2022 as an action taken by the Biden administration since *Dobbs* "to defend reproductive rights."[12] This funding went to clinics, like Planned Parenthood, that provide abortion, counsel in favor of abortion, refer for abortion, and fail to physically and financially separate their abortion services from federally funded family planning services.[13]

---

[11] Press Release, HHS, HHS Announces New Grants to Bolster Family Planner Provider Training (June 30, 2022), https://perma.cc/5MKN-W77R.

[12] White House, FACT SHEET: White House Task Force on Reproductive Healthcare Access Announces New Actions and Marks the 51st Anniversary of Roe v. Wade (Jan. 22, 2024), https://perma.cc/3KC7-D4PD.

[13] Off. of Population Affs., Off. of the Assistant Sec'y for Health, HHS, Title X Family Plan. Program, https://perma.cc/K9CD-MAAW; *see also* Press Release, HHS, HHS Awards $256.6 Million to Expand and Restore Access to Equitable and Affordable Title X Family Planning

A January 2023 Report detailing HHS's "efforts to protect reproductive health care since *Dobbs*" identified the additional Title X funding as one aspect of the Department's "six core priorities" to "protect and expand access" to "reproductive care" post-*Dobbs*.[14] In the Report, HHS also touted that, since *Dobbs*, the Department "has worked to protect and expand access to reproductive care amidst unprecedented efforts by Republican officials at the national and state level to restrict access to abortion and contraception."[15]

In March 2023, HHS cut off Title X funding to clinics in Tennessee and Oklahoma because they do not provide abortion counseling or referrals.[16] Indeed, in December 2022, HHS indicated to Tennessee's

---

Services Nationwide (Mar. 30, 2022), https://perma.cc/LM9A-NFPU; HHS, Ensuring Access to Equitable, Affordable, Client-Centered, Quality Family Plan. Servs., 86 Fed. Reg. 56,144, 56,145 (Oct. 7, 2021) (removing physical and financial separation requirement for abortion and federally funded family planning services).

[14] Report, HHS, Marking the 50th Anniversary of Roe: Biden-Harris Admin. Efforts to Protect Reprod. Health Care (Jan. 19, 2023), https://perma.cc/8EB4-P7US.

[15] *Id.*

[16] Letter from Jessica Marcella, Deputy Assistant Sec'y for Population Affs., Off. of Population Affs., Off. of the Assistant Sec'y for Health, HHS, et al., to Yoshie Darnall, Program Dir., Tenn. Dep't of Health, et al., on Decision Not to Fund Continuation Award (March 20, 2023),

Department of Health that it had a "list of states," with Oklahoma and Tennessee at the top, that HHS was looking at regarding Title X program abortion counseling. Decl. of Tobi Amosun ¶21, Oct. 24, 2023, *Tennessee v. Becerra* (E.D. Tenn. 2024). HHS reallocated the states' Title X funding to Planned Parenthood and similar groups. Tenn. Br. 15.

The next month, the Biden administration announced a new HHS Notice of Funding Opportunity to "establish a safe and secure national hotline" to provide information about abortion to Title X patients—all on the taxpayer's dime.[17]

The Rescindment and HHS's application of the 2021 Rule ignored Title X's limits, violated the Constitution and the Administrative Procedure Act (*see* Tenn. Br.), and ignored the Department's obligations under the Weldon Amendment, which prohibits HHS (among others)

---

https://perma.cc/UV9A-E39K; Pl.'s Mot. for Prelim. Inj. & Opening Br. in Supp. at 1, *Oklahoma v. U.S. Dep't Health & Human Servs.*, No. 23-CV-01052-HE (W.D. Okla. Jan. 26, 2024) (suing HHS for terminating Oklahoma's Title X funding "solely because Oklahoma will not provide counseling or referrals for abortion").

[17] White House, FACT SHEET: Biden-Harris Administration Announces Actions to Protect Patient Privacy at the Third Meeting of the Task Force on Reproductive Healthcare Access (Apr. 12, 2023), https://perma.cc/3DV5-G8DH.

from discriminating against funding recipients "on the basis that the health care entity does not provide, pay for, provide coverage of, or refer for abortions."[18] Ironically, HHS is tasked with enforcing violations of the Weldon Amendment (as well as other health care conscience protection laws).[19]

### B.   Turning Taxpayer Dollars into Abortion Funds

In addition to imposing unlawful spending conditions on the Title IX program, the Biden administration is using taxpayer dollars to fund abortion.

*Hyde Amendment.* The Hyde Amendment, a yearly appropriations rider since 1976, has ensured that no HHS (and Department of Labor and Department of Education) funds "shall be expended for any abortion" or "for health benefits coverage that includes coverage of abortion."[20] As then-U.S. Senator Biden told a concerned

---

[18] Weldon Amendment, Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, § 507(d), 136 Stat. 4459, 4908.

[19] *See* Off. for Civ. Rts., HHS, *Conscience and Religious Nondiscrimination* (last reviewed Jan. 10, 2023), https://perma.cc/Y94J-KHDG.

[20] Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, § 506(a)-(b), 136 Stat. 4459, 4908.

constituent in 1994, "those of us who are opposed to abortions should not be compelled to pay for them."[21] But as President, Biden now claims that despite the Hyde Amendment and other federal restrictions on funding abortion, taxpayer dollars can and should be used to fund abortion, especially abortion travel.

In September 2022, the Department of Justice Office of Legal Counsel (DOJ OLC) issued a post-*Dobbs* opinion approving of the administration's novel legal interpretation that the Hyde Amendment does not bar HHS providing and funding transportation for abortion.[22]

***Sick Leave.*** Three days after *Dobbs*, the Office of Personnel Management (OPM) issued guidance stating that paid sick leave for federal workers covers absences for necessary travel, including longer distances out of state, to obtain medical examinations or treatments.[23]

---

[21] Letter from Joseph R. Biden, Jr., U.S. Sen., to Michael Gregg (April 7, 1994), https://perma.cc/TCB7-Z5PB?type=image.

[22] Application of the Hyde Amend. to the Provision of Transp. for Women Seeking Abortions, 46 Op. O.L.C. ___ (Sept. 27, 2022), https://perma.cc/QTQ3-TBT6.

[23] OPM, Availability of Sick Leave for Travel to Access Med. Care (June 27, 2022), https://perma.cc/J4U8-MHDD; *see also* Letter from Marco Rubio, U.S. Sen., to Kiran Ahuja, Dir., OPM (July 5, 2022), https://perma.cc/YL64-GXGY (stating paid sick leave for abortion would

While the guidance did not mention abortion specifically, its timing and a subsequent White House Fact Sheet confirmed the guidance was intended to authorize the use of taxpayer-funded sick leave for abortion travel.[24]

***Military Funds.*** In October 2022, the Department of Defense (DOD) announced that, despite the statutory prohibition of using military funds for abortion, *see* 10 U.S.C. §1093, DOD would transport service members to obtain abortions and use funds so its doctors could obtain a license to perform abortions.[25] In a July 2023 White House briefing, John Kirby, Coordinator for Strategic Communications of the National Security Council—"the President's principal forum for considering national security and foreign policy matters"[26]—explained

---

violate the Hyde Amendment, and asking for clarification that the policy does not cover travel for abortion).

[24] White House, FACT SHEET: President Biden to Sign Executive Order Protecting Access to Reproductive Health Care Services (July 8, 2022), https://perma.cc/NHE6-D5J9.

[25] Mem. from Lloyd Austin, Sec'y of Def., DOD, to Senior Pentagon Leadership, Commanders of the Combatant Commands, Def. Agency and DOD Field Activity Dirs., on Ensuring Access to Reprod. Health Care (Oct. 20, 2022), https://perma.cc/R4PY-R2AS.

[26] White House, *National Security Council* (last visited Feb. 28, 2024), https://perma.cc/845K-TYU9.

that facilitating elective abortions for DOD personnel is a "foundational, sacred obligation" of U.S. military leaders.[27]

*Medicaid.* In August 2022, Secretary Becerra sent a letter to state governors "in light of the Supreme Court's decision in *Dobbs*," inviting them to apply for Medicaid 1115 waivers to use federal funding to "expand access" to abortion.[28] Becerra explained HHS "welcome[d] the opportunity" to work with states because "[t]his is a priority for HHS," notwithstanding federal statutory limits on abortion funding.[29]

*TANF.* The Biden administration is not only using federal funds for abortion; it is simultaneously seeking to remove funding from pregnancy centers that support both mothers and their children. For example, HHS's October 2023 proposed regulations for the Strengthening Temporary Assistance for Needy Families (TANF) program singled out pro-life pregnancy centers as an example of organizations that are

---

[27] White House, Press Briefing by Press Sec'y Karine Jean-Pierre and NSC Coordinator for Strategic Communications John Kirby (July 17, 2023), https://perma.cc/9ANX-XC5P.

[28] Letter from Xavier Becerra, Sec'y, HHS, and Chiquita Brooks-LaSure, Adm'r, CMS, HHS, to Governors (Aug. 26, 2022), https://perma.cc/9WRA-3DEU.

[29] *Id.*

ineligible for TANF funding because they likely do not accomplish a TANF purpose.[30] Pregnancy centers, however, can and do readily accomplish TANF's four statutorily defined purposes: (i) providing "assistance to needy families so that children may be cared for in their own homes or in the homes of relatives"; (ii) ending "the dependence of needy parents on government benefits by promoting job preparation, work, and marriage"; (iii) preventing and reducing "the incidence of out-of-wedlock pregnancies" and establishing "annual numerical goals for preventing and reducing the incidence of these pregnancies"; and (iv) encouraging "the formation and maintenance of two-parent families." 42 U.S.C. §601(a).

## C.    Turning Hospital Emergency Rooms into Abortion Clinics

The Biden administration is seeking to turn hospital emergency rooms across the country into on-demand abortion clinics. Within weeks of the Supreme Court's decision in *Dobbs*, HHS's Centers for Medicare and Medicaid Services (CMS) issued new guidance (which also

---

[30] HHS, Strengthening Temp. Assistance for Needy Families (TANF) as a Safety Net and Work Program, 88 Fed. Reg. 67,697, 67,705 (Oct. 2, 2023).

purportedly "does not contain new policy"[31]) claiming the Emergency Medical Treatment and Labor Act (EMTALA), 42 U.S.C. §1395dd, could require physicians to perform or complete abortions and could preempt state abortion laws protecting unborn children.[32] HHS Secretary Becerra personally sent a letter to healthcare providers reiterating these purported obligations under EMTALA.[33]

EMTALA was enacted by Congress in 1986 to ensure patients could receive emergency services even if they were unable to pay.[34] Under EMTALA, Medicare-funded hospitals are required to medically screen, stabilize, and appropriately transfer an individual with an "emergency

---

[31] Mem. from CMS, HHS, on Reinforcement of EMTALA Obligations Specific to Patients Who Are Pregnant or Are Experiencing Pregnancy Loss (July 11, 2022) (rev. Aug. 25, 2022), https://perma.cc/ND68-86SK. *But see Texas v. Becerra*, 89 F.4th 529, 541 (5th Cir. 2024) ("Put simply, the Guidance sets out HHS's legal position—for the first time— regarding how EMTALA operates post-*Dobbs*. The Guidance is new policy; it does not 'merely restate' EMTALA's requirements.").

[32] Mem. from CMS, HHS, on Reinforcement of EMTALA Obligations Specific to Patients Who Are Pregnant or Are Experiencing Pregnancy Loss (July 11, 2022) (rev. Aug. 25, 2022), https://perma.cc/ND68-86SK.

[33] Letter from Xavier Becerra, Sec'y, HHS, to Health Care Providers (July 11, 2022), https://perma.cc/3DD4-RWVP.

[34] CMS, *Emergency Medical Treatment & Labor Act (EMTALA)* (last modified Jan. 5, 2024), https://perma.cc/CU7C-MLCM.

medical condition." 42 U.S.C. §1395dd. EMTALA does not mention abortion once, and no prior administration has declared that EMTALA mandates abortions. *See Texas v. Becerra*, 89 F.4th 529, 546 (5th Cir. 2024) ("EMTALA does not mandate medical treatments, let alone abortion care, nor does it preempt [state] law."). In contrast, EMTALA explicitly acknowledges the "unborn child" four times, imposing a duty on hospitals to stabilize the child as well as the mother. *See* 42 U.S.C. §§1395dd(c)(1)(A)(ii), (c)(2)(A), (e)(1)(A)(i), (e)(1)(B)(ii).

Notably, EMTALA is a funding statute that only preempts state law when it "directly conflicts" with its requirements. 42 U.S.C. §1395dd(f). Nevertheless, under HHS's novel theory, DOJ sued the State of Idaho, claiming the state's abortion law was preempted by EMTALA. This case is currently pending before the Supreme Court which will hear oral argument in April 2024 to answer "whether EMTALA preempts state laws that protect human life and prohibit abortions, such as Idaho's Defense of Life Act." *See Moyle v. United States*, Nos. 23-726, 23-727 (U.S. pet. granted Jan. 5, 2024).

### D.    Turning VA Hospitals into Abortion Clinics

The Biden administration has turned government hospitals for veterans and their families into abortion clinics that provide abortions, even when unlawful under state law. On September 9, 2022, a few months after *Dobbs*, the U.S. Department of Veterans Affairs (VA) issued an Interim Final Rule (IFR) that unlawfully determined the VA could provide abortions at VA hospitals and clinics in any state for any reason through all nine months of pregnancy.[35]

Citing the Supreme Court's *Dobbs* decision and state abortion laws, the VA claimed it had "good cause" to issue an IFR and skip advance notice and public comment.[36] The IFR claimed that post-*Dobbs* state laws aimed at protecting unborn human life created "serious threats" and "urgent risks" to the lives and health of veterans and their beneficiaries.[37] Though the IFR was issued more than two months after *Dobbs*, the VA failed to cite a case of any woman who faced these alleged "serious threats" or "urgent risks," likely because no state abortion law prohibits

---

[35] VA, Reprod. Health Servs., 87 Fed. Reg. 55,287 (Sept. 9, 2022).

[36] *Id*. at 55,295.

[37] *Id*. at 55,288.

saving a mother's life. Because the VA did not have "good cause" to bypass general notice-and-comment requirements, its IFR violates Section 553 of the Administrative Procedure Act. 5 U.S.C. §533.

The VA's rule also violates other federal laws. The IFR recognized that Section 106 of the Veterans Health Care Act of 1992, Pub. L. No. 102-585, 106 Stat. 4943 (1992), explicitly bans the VA from providing abortions.[38] But the VA's IFR claimed for the first time that Section 106 was "effectively overt[aken]" by the Veterans' Health Care Eligibility Reform Act of 1996 (VHCERA), which amended the 1992 Act.[39] The VA's claim is utterly implausible. The VHCERA never referenced abortion or claimed to repeal Section 106. Moreover, the VA's legal standard— "effectively overtook"—is one that neither the Supreme Court nor any court has endorsed. The Supreme Court "has repeatedly stated that absent a clearly expressed congressional intention to repeal, an implied repeal will only be found where provisions in two statutes are in irreconcilable conflict or where the latter Act covers the whole subject of

---

[38] 87 Fed. Reg. at 55,289 ("but not including under this section infertility services, abortions, or pregnancy care").

[39] *Id.*

18

the earlier one and is clearly intended as a substitute." *Fin. Oversight &*

*Mgmt. Bd. for P.R. v. Aurelius Inv., LLC*, 140 S. Ct. 1649, 1677 (2020)

(cleaned up). Nonetheless, less than two weeks after the VA issued its

IFR, DOJ OLC issued an opinion rubberstamping the VA's theory.[40]

The DOJ's and VA's claim that the VA can provide abortions

prohibited under state law also violates the Assimilative Crimes Act.

This law affirms that state criminal laws (including state laws

prohibiting abortion and regulating the practice of medicine) apply to

actions within a federal government building, such as VA hospitals. 18

U.S.C. §13(a). In another post-*Dobbs* opinion, DOJ OLC claimed this law

likewise provides no barrier to VA-provided abortions, state law

notwithstanding.[41]

---

[40] Intergovernmental Immunity for the Dep't of Veterans Affs. & Its
Emps. When Providing Certain Abortion Servs., 46 Op. O.L.C. ___, slip
op. at 7–8 (Sept. 21, 2022), https://perma.cc/7TA2-HBES ("In its recent
rule, VA also explained that ... section 106 has effectively been
overtaken by subsequent legislation.... We agree.").

[41] Application of the Assimilative Crimes Act to Conduct of Fed. Emps.
Authorized by Fed. L., 46 Op. O.L.C. ___, slip op. at 1 (Aug. 12, 2022),
https://perma.cc/HR9Q-T5CF.

The VA double-downed on its position when it finalized the rule on March 4, 2024, "without changes."[42] The VA reiterated that state laws—including "additional restrictions" not adopted by the VA, "such as timeframe limitations, evidentiary requirements, or prerequisite procedures (such as mandatory waiting periods or required ultrasounds)"—that "unduly interfere" with the VA's provision of abortion are "preempted."[43]

### E.   Turning the U.S. Postal Service into a Delivery Service for Abortion Drugs

The Biden administration is seeking to create an online mail-order abortion economy in all fifty states. In response to *Dobbs*, President Biden directed HHS Secretary Becerra to ensure women have "access" to abortion drugs "no matter where they live"[44] and to make these drugs "as widely accessible as possible," including via telehealth and the mail.[45]

---

[42] VA, Reprod. Health Servs., 89 Fed. Reg. 15,451, 15,451 (Mar. 4, 2024).

[43] *Id.* at 15,457, 15,462.

[44] White House, FACT SHEET: President Biden to Sign Memorandum on Ensuring Safe Access to Medication Abortion (Jan. 22, 2023), https://perma.cc/U9Q8-S9QT.

[45] White House, FACT SHEET: President Biden Announces Actions in Light of Today's Supreme Court Decision on Dobbs v. Jackson Women's Health Organization (June 24, 2022), https://perma.cc/53SQ-VM42.

Becerra confirmed that he "directed every part of my Department"—which includes the Food and Drug Administration (FDA)—"to do any and everything" to "double down and use every lever we have."[46]

Mailing abortion drugs violates federal law, which broadly prohibits mailing and using any common carrier to transport any drug, medicine, or other article used or intended to produce abortion. 18 U.S.C. §§1461, 1462.

Nevertheless, "in the wake of *Dobbs*," DOJ OLC issued an unpersuasive opinion in December 2022 advising the U.S. Postal Service that federal law does not actually restrict mailing abortion drugs even when "used to produce abortion" if the sender "lacks the intent that the recipient of the drugs will use them unlawfully."[47] Federal law, however, makes no distinction between lawful and unlawful abortions. *See All. for Hippocratic Med. v. U.S. Food & Drug Admin.*, No. 23-10362, 2023 WL 2913725, at *20–21 (5th Cir. Apr. 12, 2023) (per curium) (observing that

---

[46] Press Release, HHS, HHS Secretary Becerra's Statement on Supreme Court Ruling in Dobbs v. Jackson Women's Health Organization (June 24, 2022), https://perma.cc/89AZ-RFL4.

[47] Application of the Comstock Act to the Mailing of Prescription Drugs That Can Be Used for Abortions, 46 Op. O.L.C. __, slip op. at 1–2 (Dec. 23, 2022), https://perma.cc/9VEU-L96K.

HHS and FDA argue that federal law (section 1461 and section 1462) "does not mean what it says it means"); *see also* Brief of EPPC as Amicus Curiae Supporting Respondents, *U.S. Food & Drug Admin. v. All. for Hippocratic Med.*, Nos. 23-235, 23-236 (U.S. Feb. 28, 2024) (explaining OLC's opinion is "poorly supported and unsound").

Following DOJ's post-*Dobbs* novel interpretation of federal law, the FDA formally changed the Risk Evaluation and Mitigation Strategy (REMS) for mifepristone in January 2023 to effectuate its December 2021 decision and allow abortion drugs to be ordered via telehealth without an in-person medical examination, dispensed by retail pharmacies, and shipped nationwide through the mail or common carrier.[48] *See All. for Hippocratic Med. v. U.S. Food & Drug Admin.*, 78 F.4th 210, 267-68 (5th Cir. 2023) (Ho, J., concurring in part and dissenting in part) ("The FDA's 2021 Mail-Order Decision violates" section 1461 and section 1462, and the 2023 REMS "doubles down on this violation by permanently eliminating the in-person dispensing requirement"). HHS touted the FDA's new REMS in its report, *Marking the 50th Anniversary of Roe:*

---

[48] FDA, REMS Single Shared System for Mifepristone 200 mg (Jan. 2023), https://perma.cc/MJT5-35LF.

*Biden-Harris Administration Efforts to Protect Reproductive Health Care*, as one of the actions HHS took since *Dobbs* to protect access to abortion.[49]

A lawsuit currently pending before the Supreme Court challenges the FDA's decision to remove safety standards from mifepristone's REMS. Missouri, Idaho, and Kansas intervened in the case arguing that they have suffered sovereign and quasi-sovereign injuries from FDA's unlawful actions, which "radically interfere with the ability of the States to set policy on ... one of the most 'profound' issues of public policy." *See* States' Brief as Amici Curiae at 3, *U.S. Food & Drug Admin. v. All. for Hippocratic Med.*, Nos. 23-235, 23-236 (U.S. Feb.  29, 2024) (quoting *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 223 (2022)). Specifically, the "FDA's decision to illegally permit mailing of abortion pills nationwide frustrates the ability of States to enforce their laws." *Id.*

After the district court's decision in the case to suspend the FDA's removal of mifepristone's safety standards, Secretary Becerra told CNN

---

[49] Report, HHS, Marking the 50th Anniversary of Roe: Biden-Harris Admin. Efforts to Protect Reprod. Health Care (Jan. 19, 2023), https://perma.cc/8EB4-P7US (listing FDA decision-making as one of HHS's six strategic focuses).

that "everything is on the table."[50] CNN noted that "the secretary would not say whether he believes the FDA should ignore the ruling" and maintained that the Biden administration is considering all options."[51] *See Danco Labs. v. All. for Hippocratic Med.*, 143 S. Ct. 1075, 1076 (2023) (Alito, J., dissenting from grant of application for stays) ("here, the Government has not dispelled legitimate doubts that it would even obey an unfavorable order in these cases").

### F.    Turning Pharmacies into Abortion Drug Dispensaries

In its efforts to make abortion drugs more accessible, the Biden administration is also seeking to turn the nation's pharmacies into abortion drug dispensaries. Three days after President Biden's July 8, 2022, executive order directing HHS and Secretary Becerra "to protect and expand access to abortion care, including medication abortion,"[52]

---

[50] Jasmine Wright, *HHS Secretary Says 'Everything Is on the Table' in Response to Medication Abortion Ruling*, CNN (Apr. 9, 2023, 7:21 PM), https://perma.cc/GPC9-CVQK.

[51] *Id.*

[52] Exec. Ord. No. 14,076, Protecting Access to Reprod. Healthcare Servs., 87 Fed. Reg. 42,053 (July 8, 2022).

HHS responded[53] by issuing new guidance to "roughly 60,000 U.S. retail pharmacies," informing them of allegedly pre-existing statutory requirements that they must stock and dispense abortion drugs under federal nondiscrimination laws, Section 1557 of the Affordable Care Act (ACA), 42 U.S.C. § 8116, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794.[54] These laws, which do not mention abortion, prohibit sex and disability discrimination. According to the HHS guidance, a pharmacy "may be discriminating" on the basis of sex or disability if it refuses to provide contraception that could act as an abortifacient or fill drugs that can be used for or in conjunction with chemical abortion.[55]

---

[53] Press Release, HHS, HHS Issues Guidance to the Nation's Retail Pharmacies Clarifying Their Obligations to Ensure Access to Comprehensive Reproductive Health Care Services (July 13, 2022), https://perma.cc/67LZ-JQTS (announcing the pharmacy guidance was in response to Biden's executive order and listing actions HHS has taken to ensure access to abortion since *Dobbs*).

[54] HHS, Off. for Civ. Rts., Guidance to Nation's Retail Pharmacies: Obligations under Fed. Civ. Rts. L. to Ensure Access to Comprehensive Reprod. Health Care Servs. (July 13, 2022), https://perma.cc/KTQ5-M7FP.

[55] *Id.*

But neither statute or its regulations state pharmacies are required to stock and dispense abortion drugs. Indeed, the ACA expressly does not preempt state abortion laws. 42 U.S.C. §18023(c). Further, Section 1557 prohibits sex discrimination by incorporating Title IX of the Education Amendments of 1972, which is explicitly neutral on abortion and does not require any entity to provide any service related to abortion. 20 U.S.C. §1688.

HHS also failed to square its pharmacy guidance with the Hyde Amendment, which prohibits HHS funding of most abortions.[56]

Although HHS claimed the pharmacy guidance does "not have the force and effect of law,"[57] the goal of the guidance, as touted by the Biden administration, was "to protect access to medication abortion."[58] A state and a Catholic pharmacy sued HHS in federal court, arguing the

---

[56] Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, §§506–07, 136 Stat. 4459, 4908.

[57] HHS, Off. for Civ. Rts., Guidance to Nation's Retail Pharmacies: Obligations under Fed. Civ. Rts. L. to Ensure Access to Comprehensive Reprod. Health Care Servs. (July 13, 2022), https://perma.cc/KTQ5-M7FP.

[58] White House, FACT SHEET: The Biden-Harris Administration's Record on Protecting Access to Medication Abortion (Apr. 12, 2023), https://perma.cc/RBG2-SRTR.

guidance violated the Administrative Procedure Act. *Texas v. U.S. Dep't of Health & Human Servs.,* No. 23-CV-00022-DC, 2023 WL 4629168, at *2 (W.D. Tex. July 12, 2023). The district court denied HHS's motion to dismiss, explaining that HHS is "smurfing[] an executive policy goal into 'unreviewable' and 'unchallengeable' pieces while reinforcing the whole with an implicit enforcement threat." *Id.* at *12. Noticeably, the Biden administration "has, before and since *Dobbs,* openly stated its intention to operate by fiat to find non-legislative workarounds to Supreme Court dictates," which amounts to "a breach of constitutional constraints." *Id.*

Over a year after it issued its original guidance and almost three months after the district court denied HHS's motion to dismiss, the Department retreated a half step, revising its pharmacy guidance "to clarify that the guidance does not require pharmacies to fill prescriptions for medication for the purpose of abortion" and that it does not "suggest or imply an obligation of pharmacies to fill prescriptions for medication in violation of State laws, including those banning or restricting abortion."[59]

---

[59] HHS, Guidance to Nation's Retail Pharmacies: Obligations under Fed. Civ. Rts. L. to Ensure Nondiscriminatory Access to Health Care at Pharmacies (Sept. 29, 2023), https://perma.cc/S8ZB-WXRD.

### G.  Turning HIPAA's Privacy Protections into a Shield Against Laws Regulating Abortion

HHS is also seeking to use privacy protections for health information to block enforcement of federal and state abortion laws. Citing "concerns" about *Dobbs* and state pro-life laws, HHS issued a proposed rule in April 2023 that would create byzantine new procedures under the Health Insurance Portability and Accountability Act of 1996 (HIPAA), Pub. L. No. 104-191, 110 Stat. 1936 (1996), that covered entities must navigate before they can comply with subpoenas, court orders, and other lawful requests for protected health information (PHI) tangentially related to "reproductive health care."[60]

At present, HIPAA's privacy regulations are simple: "A covered entity may … disclose [PHI] to the extent that such … disclosure is required by law and the … disclosure complies with and is limited to the relevant requirements of such law." 45 C.F.R. §164.512(a)(1). But under HHS's proposed rule, it would be illegal for a covered entity to comply with such a request—though it is "required by law"—if the requested disclosure is believed to be "primarily for the purpose of investigating or

---

[60] HHS, HIPAA Priv. Rule to Support Reprod. Health Care Priv., 88 Fed. Reg. 23,506, 23,507 (Apr. 17, 2023).

imposing liability on any person for the mere act of seeking, obtaining, providing, or facilitating reproductive health care."[61] "[S]eeking obtaining, providing, or facilitating" is defined maximally to include: "expressing interest in, inducing, using, performing, furnishing, paying for, disseminating information about, arranging, insuring, assisting, or otherwise taking action to engage in reproductive health care; or attempting any of the same."[62] The rule also would define "reproductive health care" maximally to include all "care, services, or supplies related to the reproductive health of the individual."[63]

The repercussions of HHS's proposed rule are profound. One of the verbs in HHS's laundry list, "inducing," means to "move by persuasion or influence" or to "bring about by influence."[64] As such, HHS's proposed rule would make it illegal for covered entities to comply with a subpoena investigating an alleged coerced abortion, something that is illegal under

---

[61] *Id.* at 23,553.

[62] *Id.* at 23,552.

[63] *Id.*

[64] *Induce*, Merriam-Webster.com, https://perma.cc/UC6V-BWES (last visited Feb. 28, 2024).

state law and under the Federal Unborn Victims of Violence Act, 18 U.S.C. §1841.[65]

The proposed rule would also make it unlawful for a covered entity to cooperate with police efforts to track down human traffickers and pimps that are "paying for" and "arranging" abortions, including for minors.

This is not hyperbole. HHS admits it is seeking to thwart law enforcement efforts to "request PHI from regulated entities" to enforce abortion laws.[66] To explain what sorts of uses it has in mind, HHS cites a report from a "reproductive justice" group that laments states are using

---

[65] 18 U.S.C. §1841(a) makes it unlawful to cause the death of an unborn child through "conduct that violates any of the provisions of law listed in subsection (b)." Because the provisions listed in section 1841(b) include the federal law prohibiting interstate domestic violence, 18 U.S.C. §2261, the Act "subjects a defendant to federal prosecution if he crosses state lines with the intent to injure or intimidate his spouse or partner and thereby causes the death of that spouse's or intimate partner's unborn child." Michael Holzapfel, *The Right to Live, the Right to Choose, and the Unborn Victims of Violence Act*, 18 J. Contemp. Health L. & Pol'y 431, 442 (2002).

[66] 88 Fed. Reg. at 23,519.

reports from "designated mandatory reporters" to enforce laws against second and third trimester abortions.[67]

HHS's proposed rule would also rewrite HIPAA to exclude unborn children from the definition of "person."[68] The Department cites only one statute in support of its position, 1 U.S.C. §8, which it claims "is consistent" with its proposed definition of "person."[69] To the contrary, 1 U.S.C. §8 states, "Nothing in this section shall be construed to affirm, deny, expand, or contract any legal status or legal right applicable to any member of the species homo sapiens at any point prior to being 'born alive.'" Indeed, the Genetic Information Nondiscrimination Act of 2008 (GINA), Pub. L. No. 110-233, 122 Stat. 881, which amended HIPAA, repeatedly states that privacy protections for information of an "individual or family member" extend to information of "any embryo" and "any fetus carried by such pregnant woman." 26 U.S.C. §9802(g); 29

---

[67] *Id.* at 23,519 n.170 (citing Laura Huss, Farah Diaz-Tello, Colleen Samari, *Self-Care, Criminalized: August 2022 Preliminary Findings*, If/When/How (Aug. 2022), at 2-3, https://perma.cc/8ZRQ-D8H8).

[68] 88 Fed. Reg. at 23,552.

[69] *Id.* at 23,523.

U.S.C. §1182(f); 42 U.S.C. §§300gg–4(f), 300gg–53(f); 42 U.S.C. §1395ss(x)(4); 42 U.S.C. §2000ff-8(b).

This proposed rule is yet another attempt by the Biden administration to disregard *Dobbs* and undermine state abortion laws protecting unborn children enacted by the people and their elected representatives. Indeed, Secretary Becerra explained that this rule was a response to President Biden's direction to HHS in the wake of *Dobbs* to "take action to meet this moment," which HHS "wasted no time in doing."[70]

## H.  Turning Workplace Pregnancy Accommodations into an Abortion Mandate

After *Dobbs*, the Biden administration not only seeks to enable and fund abortion, it also seeks to convert protections for pregnant women into abortion mandates. In December 2022, Congress passed the Pregnant Workers Fairness Act (PWFA) with broad bipartisan support.[71]

---

[70] Press Release, HHS, HHS Proposes Measures to Bolster Patient-Provider Confidentiality Around Reproductive Health Care (Apr. 12, 2023), https://perma.cc/V389-7DSJ.

[71] Consolidated Appropriations Act, 2023, Pub. L. 117-328, Division II, 136 Stat. 4459, 6084 (2022) (codified at 42 U.S.C. 2000gg–2000gg-6).

The "pro-mother, pro-baby" Act[72] filled a gap in employment law by requiring employers, including states, to provide their employees "reasonable accommodations" for "the known limitations related to the pregnancy, childbirth, or related medical conditions" unless it poses "an undue hardship" on the employer. 42 U.S.C. §2000gg-1(1).

When abortion concerns were raised on the Senate floor, both Democrat and Republican Senate co-sponsors Bob Casey and Bill Cassidy rejected the notion that the PWFA required abortion accommodations.[73] Democrat Senator Patty Murray said, "I can't think of a more commonsense, less controversial bill."[74]

Yet, under the Equal Employment Opportunity Commission's proposed PWFA regulations employers—including those who are pro-life—are required to accommodate their employees' abortions, even when

---

[72] 168 Cong. Rec. S7050 (daily ed. Dec. 8, 2022) (statement of Sen. Cassidy).

[73] *Id*. (statement of Sen. Casey) ("I want to say for the record, however, that under the act, under the Pregnant Workers Fairness Act, the Equal Opportunity Employment Commission, the EEOC, could not—could not—issue any regulation that requires abortion leave, nor does the act permit the EEOC to require employers to provide abortions in violation of State law."); *id*. (statement of Sen. Cassidy) ("I reject the characterization that this would do anything to promote abortion.").

[74] *Id* at S7049.

unlawful under state law or against the conscience of the employer. The EEOC's proposed PWFA regulations are divorced from the intent of Congress and the text of the PWFA; abortion is not mentioned once in the PWFA, and it is not a medical condition, much less a pregnancy- or childbirth-related medical condition.[75]

\* \* \*

The Supreme Court's direction in *Dobbs* was clear: the issue of abortion is returned "to the people and their elected representatives." But the Biden administration is ignoring that direction and using federal agencies and unelected government officials to promote its abortion-at-all-costs agenda. As documented above, the Biden administration and HHS have established a pattern and practice of ignoring federal laws and state sovereign interests in their efforts to protect and expand access to abortion. The Rescindment reflects this pattern of politized actions.

---

[75] EEOC, Regulations to Implement the Pregnant Workers Fairness Act, 88 Fed. Reg. 54,714 (Aug. 11, 2023).

## CONCLUSION

Amicus urges the Court to grant the relief Plaintiff-Appellant seeks.

Respectfully submitted,

s/ Eric N. Kniffin
ERIC N. KNIFFIN
RACHEL N. MORRISON
ETHICS & PUBLIC POLICY CENTER
1730 M Street, N.W.
 Suite 910
Washington, DC 20036
(202) 682-1200
ekniffin@eppc.org

*Counsel for* Amicus Curiae

April 12, 2024

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Fed. R. App. P. 29(a)(5) because this brief contains 6,496 words, excluding parts of the brief exempted by Fed. R. App. P. 32(f) and 6 Cir. R. 32(b).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in Microsoft Word Version 2309 using a proportionally spaced typeface, 14-point Century Schoolbook.

Dated: April 12, 2024

s/ Eric N. Kniffin
Eric N. Kniffin
*Counsel for* Amicus Curiae

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.