# EXHIBIT 1

Decision by the Department of Health and Human Services, Office of the Assistant Secretary for Health administrative review panel

May 13, 2024

DEPARTMENT OF HEALTH AND HUMAN SERVICES

Office of the Secretary

Office of the Assistant Secretary for Health
Washington, D.C. 20201

May 13, 2024

Trenton Meriwether
Assistant Attorney General
Healthcare Division
Office of Tennessee Attorney General

Matthew P. Dykstra
Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, Tennessee 37202

Dear Assistant Attorney General Meriwether:

This is a decision by the Department of Health and Human Services (HHS), Office of the Assistant Secretary for Health (OASH) administrative review panel ("Review Panel" or "Panel") in response to an administrative appeal by the Office of the Tennessee Attorney General of a decision by the Office of Population Affairs (OPA) not to fund Tennessee's Title X continuation award, FPHPA006553.

After careful review and assessment, the Review Panel has determined that OPA's decision to not fund Tennessee's Title X continuation award for the Tennessee Department of Health's (TDH) failure to comply with the applicable terms was correct. In accordance with 42 C.F.R. § 50.406(h), Tennessee has the right to appeal this decision to the Departmental Appeals Board under 42 CFR Part 16.

**Introduction**

The mission of OPA is to promote health across the reproductive lifespan through innovative, evidence-based adolescent health and family planning programs, services, strategic partnerships, evaluation, and research. Among its activities, OPA administers the Title X Family Planning Program, ensuring access to a broad range of medically sound, effective family planning and preventive health services for millions of low-income or uninsured individuals at more than 4,000 sites nationwide. Title X is a critical part of the social safety net and Title X sites provide services to a racially and ethnically diverse set of clients to support individuals to live the healthiest lives they can.

Through the Title X program, OPA funds grantees across the United States to deliver equitable, affordable, client-centered, and high-quality family planning and preventive health services. These grantees must ensure that services are provided in a manner that is client-

centered, culturally and linguistically effective, inclusive, and trauma-informed; protects the dignity of the individual; and ensures equitable and quality service delivery consistent with nationally recognized standards of care. The Tennessee Department of Health (TDH) applied for a fiscal year (FY) 2023 continuation award for the Title X program. This document summarizes our review of OPA's decision not to fund that award.

In March 2023, OPA informed TDH that it had declined to fund the Title X continuation award for Tennessee's family planning program for FY 2023.[1] Because TDH recently limited its non-directive counseling for pregnant patients to options that are legal in Tennessee, OPA determined that Tennessee was out of compliance with the regulatory requirements of Title X and that continuation of Tennessee's funding was "not in the best interests of the government."[2]

On April 19, 2023, Tennessee submitted a timely notice of appeal seeking review of OPA's decision and explaining why Tennessee believes OPA's decision is contrary to law and/or arbitrary and capricious in violation of the Administrative Procedures Act (APA).[3] In accordance with 42 C.F.R. Part 50, the Secretary of HHS (through OASH) convened this Review Panel to evaluate whether OPA's decision was correct given the applicable statutes and regulations and relevant facts. As an administrative review panel, the Panel is tasked with reviewing OPA's actions and determining whether the Office's denial of TDH's non-competing continuation award under the project period system of funding was correct based on TDH's failure to comply with the terms of a previous award. Review of legal challenges to the validity or constitutionality of the OPA regulations is not within the Review Panel's purview.[4]

On August 28, 2023, TDH transmitted an "additional submission,"[5] which is permissible under the rules governing this Panel's review.[6] On August 29, 2023, in accordance with 42 C.F.R. § 50.406(e), OPA "provide[d] the review committee . . . with copies of all relevant background materials (including applications(s), award(s), summary statement(s), and correspondence and any additional pertinent information available." As part of its relevant background materials, OPA submitted an explanation for its decision, arguing that its decision was "justified and supported by the Title X statutory authorities, the Title X regulations, and decades of agency practice."[7] OPA did not respond to TDH's new arguments in their additional submission.

After a careful review of the submissions of both parties and the applicable law and regulations, the Review Panel finds that OPA's decision not to fund Tennessee's Title X award for FY 2023 was correct. OPA used a "relevant" definition of "pregnancy termination" to include

---

[1] March 20, 2023, letter from J. Marcella to Y. Darnall and R. Alvarado, MD (Tab J). "Tab" references are to the attachments to OPA's Responsive Statement ("OPA Resp.").
[2] *Id.* at 1.
[3] April 19, 2023, notice of appeal letter from T. Meriwether and M. Dykstra to J. Marcella ("Notice of Appeal") (Tab HH).
[4] *See, e.g.,* 45 C.F.R. § 16.14(d) ("The [reviewing body] shall be bound by all applicable laws and regulations.").
[5] August 28, 2023, letter from T. Meriwether and M. Dykstra to K. Hayes et al. ("Additional Submission").
[6] 45 C.F.R. § 50.406(f) ("The grantee shall be given an opportunity to provide the review committee with additional statements and documentation not provided in the request for review . . .").
[7] August 29, 2023, OPA responsive memo from J. Marcella to the Office of the Assistant Secretary for Health Review Committee ("OPA Response") at 1.

abortion, did not incorrectly change its position, and adequately considered the effects of not funding Tennessee's continuation award. Since the U.S. Supreme Court overturned *Roe v. Wade* with its decision in *Dobbs v. Jackson Women's Health Organization*, eliminating the federal right to abortion, the Tennessee state government may discourage abortions by making performance of them illegal; it may not, however, continue to receive Title X funds to support its family planning program if it does not inform pregnant patients of abortion as an option or declines to provide referrals upon request to out-of-state providers.

**Title X Regulations Pertaining to Pregnancy Counseling and Abortion Referrals**

For most of its existence, Title X has required grant recipients to offer pregnant patients the opportunity to receive non-directive counseling regarding various options, including pregnancy termination, and referral to abortion providers upon request.[8] HHS instituted this requirement, without notice-and-comment rulemaking, in 1981.[9] In 1988, the agency reversed course and, through notice-and-comment rulemaking, prohibited counseling and referrals for abortions.[10] That rule was quickly challenged. The U.S. Supreme Court found the statute to be ambiguous as to referrals for abortion and held that *Chevron* deference applied.[11] Accordingly, the Court deferred to HHS' interpretation and upheld the 1988 rule as a permissible interpretation of Title X.  But before the rule was implemented nationwide, HHS—under the Clinton administration—announced its intention to engage in new notice-and-comment rulemaking on the subject.[12] The pregnancy termination counseling and referral mandate was reinstated through interim guidelines in 1993 and confirmed by a new final rule in 2000.[13] This approach remained until 2019.[14]

In 2019, HHS—under the Trump administration—engaged in notice-and-comment rulemaking to again prohibit abortion counseling and referrals.[15] After President Biden took office, HHS once more engaged in notice-and-comment rulemaking to rescind the 2019 prohibition and to revive the counseling and referral mandate that had been in place almost continuously since 1981.[16] The text of the regulation currently reads:

(a) Each project supported under this part must: . . .

   (5) Not provide abortion as a method of family planning. A project must:

      (i) Offer pregnant clients the opportunity to be provided information and counseling regarding each of the following options:

         (A) Prenatal care and delivery.
         (B) Infant care, foster care, or adoption; and

---

[8] OPA Resp. at 2.
[9] *See Ohio v. Becerra*, No. 21-4235 (6th Cir. Nov. 30, 2023), slip op. at 3; 87 F.4th 759, 765-76 (2023).
[10] *Id.* slip op. at 4; 87 F.4th at 766.
[11] *Id.*
[12] 65 Fed. Reg. 41,270, 41,271 (July 3, 2000).
[13] *See* 58 Fed. Reg. 7462 (Feb. 5, 1993); 65 Fed. Reg. 41,270, 41,271 (July 3, 2000).
[14] *Ohio v. Becerra,* No. 21-4235, slip op. at 5; 87 F.4th at 767.
[15] *Id.*
[16] *Id.*; Ensuring Access to Equitable, Affordable, Client-Centered, Quality Family Planning Services, 86 Fed. Reg. 56144 (Oct 7, 2021) (Tab E); 45 C.F.R. § 59.5(a)(5) (Tabs B and C) ("2021 Rule"); *Ohio v. Becerra,* No. 21-4235, slip op. at 4.

> (C) Pregnancy termination.
>
> (ii) If requested to provide such information and counseling, provide neutral, factual information and nondirective counseling on each of the options, and, referral upon request, except with respect to any option(s) about which the pregnant client indicates they do not wish to receive such information and counseling.[17]

Twelve states, not including Tennessee, challenged the re-implementation of the pregnancy termination counseling and referral mandate in the U.S. District Court for the Southern District of Ohio and sought a preliminary injunction preventing the implementation of the revised rule.[18] In denying the plaintiffs' request for a preliminary injunction, the district court found plaintiffs did not have a likelihood of success on the merits and upheld the HHS decision to require non-directive pregnancy termination counseling and abortion referrals upon request as a permissible interpretation of the statute.[19]

The plaintiff states appealed the preliminary injunction decision to the U.S. Circuit Court of Appeals for the Sixth Circuit. A motions panel of the Sixth Circuit denied the plaintiffs' request to stay implementation of the rule while the appeal was pending.[20] On November 30, 2023, a separate panel of the Sixth Circuit ruled on the merits and issued its opinion affirming the district court's ruling with respect to the counseling and referral mandate.[21] The Sixth Circuit agreed with the district court that the counseling and referral mandate is a permissible interpretation of the statute supported by notice-and-comment rulemaking and that the agency had articulated a sufficient explanation for the choices made in promulgating that aspect of the final rule.[22]

**Events Leading to OPA's Decision Not to Fund Tennessee's Continuation Award**

TDH and OPA are largely in agreement as to the facts leading to OPA's decision not to fund Tennessee's continuation award. To summarize, OPA conducted a routine program review in July 2022, and Tennessee's program was found to have met expectations in that review, the result of which was transmitted in October 2022.[23] During and after that review, OPA expressed concerns regarding, and the parties discussed, the effects that Tennessee's new law outlawing most abortions in the state might have on TDH's policy on pregnancy termination counseling and referrals.[24]

---

[17] 45 C.F.R. § 59.5(a)(5).
[18] *Ohio v. Becerra*, No. 21-4235, slip op. at 6; 87 F.4th at 767-68.
[19] *Ohio v. Becerra*, 577 F. Supp. 3d 678, 698 (S.D. Ohio 2021).
[20] *Ohio v. Becerra*, No. 21-4235, 2022 WL 413680 (6th Cir. Feb. 8, 2022), at *1 (concluding the plaintiff states had not demonstrated they would be irreparably harmed without the injunction).
[21] *Ohio v. Becerra*, No. 21-4235 (6th Cir. Nov. 30, 2023). The Sixth Circuit reversed the district court with respect to the program separation portions of the regulation, but that ruling is not relevant to the matter before the Review Panel. *Ohio v. Becerra*, No. 21-4235, slip. op. at 17-24; 87 F.4th at 775-80.
[22] *Id.* slip op. at 16-17; 87 F.4th at 775.
[23] October 19, 2022, email from T. Reed to D. Lambert (Tab MM).
[24] *Id.*

The one factual issue on which the parties disagree involves communications between them regarding the potential effects of the new law on TDH's policies. OPA asserts that TDH was unclear about the potential effects of the new law on policies regarding counseling and referral and that OPA proceeded based on the written documentation that TDH provided regarding the policies in effect at the time of the review.[25] TDH, on the other hand, asserts it verbally communicated to the clinical consultant and OPA representatives that it intended to restrict pregnancy termination counseling to options that remained legal in Tennessee after the new state law went into effect and that it would not make abortion referrals to out-of-state providers.[26] Tennessee, however, has not provided evidence that TDH put its intentions in writing prior to February 2023.

On January 25, 2023, OPA posted a notice on the Title X grantee interface requiring that all grantees confirm their compliance with the counseling and referral mandate given the changing legal landscape post *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022).[27] After receiving a brief extension past the original deadline, TDH submitted to OPA its new policy restricting pregnancy counseling and referrals to options that "are legal in the State of Tennessee."[28]

On March 1, 2023, OPA informed TDH that its new policy was not in compliance with the requirements of Title X regulations and that its continuation award would not be funded if the policy was not changed to bring the family planning program into compliance.[29] In the same letter, OPA offered several options for providing the required counseling and referrals to bring the program into compliance, including two options that would not require program personnel to provide the counseling or referrals.[30] TDH responded via letter maintaining its policies complied with Title X requirements because it did not construe the phrase "pregnancy termination" to include every possible method of "pregnancy termination," such as abortion.[31]

OPA did not fund TDH's continuation award for FY 2023 and initiated the mechanism for ending TDH's status as a grantee and closing out its award.[32] Tennessee's appeal of OPA's decision followed.[33]

**Proper Application of the Regulation Is Within the Panel's Purview; Validity of the Regulation Is Not**

This Review Panel was tasked with evaluating whether OPA's decision was correct under current regulations pertaining to Title X family planning programs. As noted above, the scope of

---

[25] OPA Resp. at 6.
[26] Notice of Appeal at 2-3.
[27] OPA Resp. at 2-3; January 25, 2023 letter from J. Marcella and S. Moore to Title X Services Grantee Project Directors (Tab G).
[28] [Tennessee] Dept. of Health Policy: *Pregnancy Test Conducted in a Family Planning Visit* (July 1, 2022), at 1 (Tab H).
[29] March 1, 2023, letter from J. Marcella to Y. Darnell and R. Alvarado, MD, at 1 (Tab I).
[30] *Id.* at 2.
[31] March 13, 2023, letter from Y. Darnall and R. Alvarado, MD, to T. Reed (Attachment 10 to Notice of Appeal).
[32] *See* March 20, 2023, letter from J. Marcella to Y. Darnell and R. Alvarado, MD (Tab J).
[33] *See* Notice of Appeal.

our inquiry was limited to evaluating whether OPA's noncontinuation of TDH's grant based on its determination that TDH would not comply with duly enacted regulations was correct. Arguments pertaining to the validity of the regulation or challenging its constitutionality are beyond the purview of this Panel. (In other words, evaluating whether OPA actions are in keeping with the text of the regulation is within the scope of our review; whether the regulation is a constitutional and permissible interpretation of the statute is not.)

This Review Panel also recognizes that two federal courts have already opined on some of the issues raised in this review and that Tennessee has filed a federal lawsuit challenging the agency actions.[34] A fully briefed motion for a preliminary injunction is pending in that lawsuit. The federal district court in Tennessee has not yet issued any rulings of significance. However, both the U.S. District Court for the Southern District of Ohio and the U.S. Circuit Court of Appeals for the Sixth Circuit—the circuit in which Tennessee sits—have upheld the portion of the 2021 Rule pertaining to the counseling and referral mandate as a valid interpretation of Title X.[35] The Panel renders its decision within the context of this legal landscape.

**Tennessee's Narrow Reinterpretation of the Applicable Regulation Does Not Allow It to Circumvent the Requirements of Title X**

Tennessee explains in both its response to OPA's notice of non-compliance and its Notice of Appeal that it views the pregnancy termination counseling and referral mandate to encompass only pregnancy terminations that are legal within Tennessee.[36] Under its new abortion law, a pregnancy may only be legally terminated within Tennessee if the termination is with intent "to increase the probability of a live birth, to preserve the life or health of the child after live birth, or to remove a dead fetus."[37] This new provision of state law, however, does not change the meaning of the term "pregnancy termination" in the federal regulation.

Tennessee proposed a different definition of the term, and it has continued to use this definition even after OPA determined that this definition is incorrect.[38] If doubt existed as to the scope of the term "pregnancy termination," it should have become clear when OPA sent its notification of non-compliance on March 1, 2023.[39]

While the Tennessee legislature certainly has the power to redefine abortion for purposes of state law to exclude some pregnancy terminations based on the reason for performing the procedure, that does not change the definition of the term "pregnancy termination" used in federal regulations.

---

[34] *Ohio v. Becerra*, No. 21-4235 (6th Cir. Nov. 30, 2023); Compl., *Tennessee v. Becerra*, No. 3:23-cv-384 (E.D. Tenn. 2023).
[35] *Ohio v. Becerra*, No. 21-4235 (6th Cir. Nov. 30, 2023), slip op. at 16-17; *Ohio v. Becerra*, 577 F. Supp. 3d 698.
[36] March 13, 2023, letter from Y. Darnall and R. Alvarado, MD, to T. Reed (Attachment 10 to Notice of Appeal); Notice of Appeal.
[37] Tenn. Code Ann. § 39-15-213(a)(1) (excluding such procedures from the definition of abortion) (Tab M).
[38] March 1, 2023, letter from J. Marcella to Y. Darnall and R. Alvarado, MD, at 1 (Tab I).
[39] Tennessee's argument that mandating non-directive counseling and referrals upon request for all types of pregnancy terminations is an impermissible interpretation of Title X is a challenge to the validity of the regulation, a challenge that two federal courts have rejected and is beyond the purview of the Panel.

A definition of pregnancy termination that includes abortions is further supported by medical science documented in the literature, the practices of grantees and HHS over the past 50 years, and even the forms through which Tennessee gathered statistics regarding abortions performed in state.[40] On the other hand, Tennessee cites only its own law to find a purported conflict in 42 C.F.R. § 59.5(a)(5) in support of its theory that abortions are not included within the term "pregnancy termination."[41] With the weight of support in its favor, OPA is within its authority to use the inclusive definition of "pregnancy termination" in applying the regulation to Tennessee's family planning program. Furthermore, allowing each state to create its own definition of "pregnancy termination" would create an unworkable regulatory framework allowing states to choose with which Title X conditions and obligations they will comply.

In the assessment of this Review Panel, Tennessee may not unilaterally change the definition of the term "pregnancy termination" to suit its policy objectives. Tennessee law changed; Title X and its regulations did not. Furthermore, Tennessee mischaracterizes as fundamental the nature of the impact the changes in state law had upon its obligations under Title X. The scope of the mandated referrals changed when Tennessee banned most abortions. Changing the scope of abortions that are illegal in a state should not have an impact on a Title X family planning program's counseling and referral practices except to increase (or decrease) the number of out-of-state referrals.

For the reasons articulated, this Review Panel has determined that OPA was correct in finding that Tennessee's interpretation of the term "pregnancy termination" to exclude most abortions placed it out of compliance with the counseling and referral mandate of Title X.

**OPA's Decision Not to Fund Tennessee's Continuation Award Was Not Incorrect**

Tennessee argues that not only OPA's interpretation of the rule but also the decision not to fund the continuation award was arbitrary and capricious[42] because TDH's family planning program met expectations in the routine program review conducted by OPA in July 2022. Though the parties disagree regarding the substance of the oral communications exchanged during the review process, this Review Panel has determined that it was clear that OPA gave TDH ample notice—some of it in writing—of its concerns about the policy changes Tennessee was contemplating in the wake of *Dobbs*. Therefore, Tennessee's claims of surprise or an abrupt, unsubstantiated about-face on the part of OPA are not consonant with the available evidence.

When HHS proposed the new rule in 2021, it was commonly understood the rule would reinstate the requirement that grantees provide pregnant patients with the opportunity to receive non-directive counseling regarding pregnancy termination, as well as referrals upon request,

---

[40] *See, e.g.*, *Program Guidelines for Project Grants for Family Planning Services* (1981), Sec. 8.6 ("Pregnancy Diagnosis and Counseling"); Final Rule, 86 Fed. Reg. 56144, 56144 (October 7, 2021) ("[T]he effect of this 2021 final rule is to revoke the requirements of the 2019 regulations, including removing restrictions on nondirective options counseling and referrals for abortion services.") (Tab E); OPA Resp. at 5 (citing Tennessee's Induced Termination of Pregnancy Statistics from 2008 to 2020 (Tabs T to FF)).
[41] *See* Notice of Appeal at 7.
[42] As noted *supra*, p. 2, this Panel's review was guided by evaluating whether OPA's decision was correct. However, because Tennessee relied on an arbitrary and capricious standard in their submissions that standard is referenced in this section.

including for abortion.[43] The comments that Tennessee provided regarding the proposed rule indicated this as the new context if the final rule was issued.[44] Therefore, this Review Panel concludes it should not surprise TDH that OPA would enforce the rule by making funding contingent upon program compliance with the conditions set forth within it.

If TDH doubted that OPA would seek to enforce the 2021 Rule, such doubt should have been eliminated by the end of the routine program review conducted in July 2022. The transmittal email OPA sent with the positive result of that program review noted that the OPA clinical consultant had voiced concerns regarding the impact of the new state law, advising:

> One other action item, if you remember from the exit interview [in July], Karen [the clinical consultant] was concerned about patient counseling once the new state law was enacted on August 25th. In the end, it was determined that Tennessee Department of Health was compliant and did meet expectations as of the date of the Program Review. That said, please update us on the policy changes in response to enactment of *Tenn. Code Ann*. § 39-15-213.[45]

TDH did not respond to this concern to express confusion or disagreement with this characterization of the exit interview conversation; nor does TDH dispute in this appeal that this statement was made by the clinical consultant in July 2022.[46] It seems apparent TDH knew in July 2022 that OPA had concerns with how Tennessee's new abortion prohibition would affect the counseling and referral policies of TDH's family planning program.[47]

Although at that time, OPA determined that the TDH program was compliant and meeting expectations as of the date of the Program Review, that approval was based on policies and procedure manuals provided by TDH that were outdated by the time OPA transmitted the results of the program review.[48] TDH did not provide the updated policy and procedure manual dated July 1, 2022, during the July 11–15 program review and it did not respond to OPA's October request to "update us on the policy changes in response to enactment of Tenn. Code Ann. § 39-15-213"[49]—even though TDH had finalized

---

[43] *See* 86 Fed. Reg. 56144, 56144 (October 7, 2021) ("The effect of this 2021 final rule is to revoke the requirements of the 2019 regulations, including removing restrictions on nondirective options counseling and referrals for abortion services.") (Tab E).
[44] *See* 42 C.F.R. § 59, 86 FR 19812 (describing letter comments regarding proposed rule submitted by Ohio and twenty other states (Tab P)).
[45] October 19, 2022, email from T. Reed to D. Lambert (Tab MM).
[46] *See* Notice of Appeal, Additional Submission.
[47] Though not discussed in the papers submitted to the Panel, in the memorandum in support of its motion for a preliminary injunction in the U.S. District Court for the Eastern District of Tennessee, Tennessee admits that TDH representatives had a meeting in December 2023 with J. Marcella at which its policy with respect to pregnancy termination and referrals in light of the new abortion prohibition were the primary subject. Decl. of T. Amosun, MD (dated Oct. 17, 2023) (exhibit 5 to the complaint in *Tennessee v. Becerra*, No. 3:23-cv-384 (E.D. Tenn. 2023)). TDH nonetheless did not produce its revised policy until February 13, 2023, in response to OPA's specific request for such policies from all grantees. *See* March 1, 2023, letter from J. Marcella to Y. Darnall and R. Alvarado, MD, at 1 (Tab I).
[48] *Compare* "Family Planning Administrative Manual" (Revised March 2022) (Tab JJ) and the "Tennessee Family Planning Program Administrative Policy and Procedure Manual" (Revised May 2022) (Tab KK) *with* "Pregnancy Test Conducted in a Family Planning Visit" (July 1, 2022) (Tab H).
[49] October 19, 2022, email from T. Reed to D. Lambert (Tab MM).

changes to its policies several months prior. These documented communications and the failure to produce updated documents in a timely fashion make it difficult to credit TDH's contentions that OPA was aware of TDH's intention to limit the options about which pregnant patients would be counseled or referred.

TDH's appeal relies heavily on a statement in the Program Review that "[n]o referrals for abortion are made" to stake its claim that OPA approved its new policy in July 2022 and capriciously reversed course in January 2023.[50] This statement in the Program Review Report does not sufficiently support TDH's claim of arbitrary and capricious decision-making by OPA.

**Any Reliance Interest in the Funding Tennessee May Have Does Not Override OPA's Duty to Apply the Conditions of Title X Funding Pursuant to Law**

In its Additional Submission, Tennessee focuses primarily on OPA's purported failure to consider Tennessee's reliance interest in the continuation of funding for its family planning program.[51] However, OPA is not obligated to fund any continuation award at the end of the previous fiscal year.[52] Furthermore, deferral to the purported reliance interests of the State would privilege those interests over the interests of the people served by Title X and, if applied uniformly, tie the hands of OPA to enforce the applicable regulations in any state that receives a substantial amount of Title X funds.

The applicable regulation makes clear that the project period identified in a notice of grant award (generally three to five years) is not a commitment to fund a program for that entire time and that funding the continuation award is evaluated on a yearly basis.[53] A mechanism that is designed to streamline the grant application and administration process—while explicitly reserving OPA's discretion to reconsider a program's compliance and performance on a yearly basis—cannot be used as rationale for the agency to impede or prevent it from enforcing the applicable rules. TDH knew or should have known it was placing its Title X grant in jeopardy when it modified its policies to sidestep Title X's non-directive counseling and referral mandate. Given foreknowledge of

---

[50] *See* Notice of Appeal at 10 (quoting OPA's Tennessee Department of Health Title X Program Review Report (Tab II) at 24).

[51] The other argument raised in the Additional Submission is a supposed need for OPA to await resolution of the appeal of the denial of a preliminary injunction in the legal challenge to the 2021 Rule. OPA did not need to delay enforcing the 2021 Rule during appeal of a decision upholding that rule. In addition, the Sixth Circuit has now affirmed the district court's ruling regarding the relevant aspect of the regulation, rendering moot Tennessee's argument on this point. *Ohio v. Becerra*, No. 21-4235, slip op. at 16-17 (6th Cir. Nov. 30, 2023).

[52] *See* 42 C.F.R. § 59.8(b) (obligating HHS only to provide funds to a grantee for one year while providing HHS with the option of issuing noncompetitive continuation grants for additional years).

[53] 42 C.F.R. § 59.8(a) ("The notice of grant award specifies how long HHS intends to support the project without requiring the project to recompete for funds. The anticipated period will usually be for three to five years."); 42 C.F.R. § 59.8(b) ("Decisions regarding continuation awards and the funding level of such awards will be made after consideration of such factors as the recipient's progress and management practices, and the availability of funds."); 42 C.F.R. § 59.8(c) ("Neither the approval of any application nor the award of any grant commits or obligates the United States in any way to make any additional, supplemental, continuation, or other award with respect to any approved application or portion of an approved application.").

the likely consequences of its actions, TDH cannot now claim OPA is responsible for ignoring its reliance interests.

As for the people relying on services provided through Title X funding in Tennessee, OPA is certainly within its discretion to determine that any temporary gaps in services resulting from not funding Tennessee's continuation grant are outweighed by the harm to patients of not being provided counseling regarding their options for pregnancy termination and abortion referrals upon request. Further, our review suggests that OPA strongly considered the effects that its decision would have on those individuals and their access to family planning program services. OPA has re-directed a substantial portion of those funds to other service providers in the state [54] and the patients formerly benefiting from the Title X funds flowing through TDH are able to obtain services that are compliant with Title X regulations through the alternate providers to which those funds have been reallocated.

**Conclusion**

This Review Panel takes very seriously its role to conduct a systematic, thoughtful, and thorough review to evaluate whether OPA's decision was correct under the applicable statutes and regulations and particular facts present with regard to the TDH grant.

HHS issues rules with intent—in this instance to advance the statute's goals of providing family planning in a manner consistent with medical ethics. That includes increasing the awareness for pregnant patients of all options, even if some of those options involve travel to other states. Since *Roe* was overruled, Tennessee may discourage abortion—which it views as unethical—by criminalizing the performance of abortions in the state; but it cannot criminalize or decline to provide medical information about abortion with referrals upon request and continue to receive federal Title X funds.

The government has a strong interest in ensuring its rules are followed, and this Review Panel has determined that OPA's decision to not fund Tennessee's Title X continuation award for TDH's failure to comply with the applicable terms was correct. When TDH rebuked OPA's proposed methods of reconciling Tennessee law with the extant obligations of Title X, TDH left OPA with no alternative.

Respectfully Submitted,

*B. Kaye Hayes*
B. Kaye Hayes, MPA
Deputy Assistant Secretary for Health – Infectious Disease and HIV Policy
Chair, OASH Review Committee

---

[54] Compl., *Tennessee v. Becerra*, No. 3:23-cv-384 (E.D. Tenn. 2023), ¶ 79.

Michael F. Iademarco, MD, MPH
RADM, US Public Health Service
Deputy Assistant Secretary for Health – Science and Medicine


David M. Johnson, MPH
Deputy Assistant Secretary for Health – Regional Health Operations