# No. 24-5220

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| STATE OF TENNESSEE, | : | Appeal from the |
|     Plaintiff-Appellant, | : | United States District Court |
| v. | : | Eastern District of Tennessee |
| | : | |
| BECERRA, ET AL., | : | District Court Case No. |
|     Defendants-Appellees. | : | 3:23-cv-384-TRM-jem |
| | : | |
| | : | |
| | : | |

## BRIEF OF *AMICI CURIAE* STATE OF OHIO AND 21 OTHER STATES IN SUPPORT OF APPELLANTS' PETITION FOR REHEARING EN BANC

DAVE YOST
Ohio Attorney General

T. ELLIOT GAISER
Ohio Solicitor General
 *Counsel of Record*
STEPHEN P. CARNEY
Deputy Solicitor General
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
614-466-8980
Thomas.Gaiser@OhioAGO.gov

*Counsel for Amicus Curiae
 State of Ohio*

*(Additional counsel listed on signature block)*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION AND STATEMENT OF *AMICI* INTEREST ........................ 1

STATEMENT OF FACTS ................................................................................... 3

EN BANC REVIEW IS WARRANTED .............................................................. 6

    I.    The full Court should address the scope of *Loper Bright's* stare-decisis reservation for "specific agency actions." ................................................ 6

        A.    The panel decision could affect agency power under many statutes. ............................................................................................ 6

        B.    The panel erred. ........................................................................... 8

    II.    The full Court should review the Spending-Clause holding because it conflicts with earlier panel precedent and erodes State authority. ........... 11

CONCLUSION .................................................................................................. 13

ADDITIONAL COUNSEL ................................................................................ 14

CERTIFICATE OF COMPLIANCE .................................................................. 15

CERTIFICATE OF SERVICE ........................................................................... 16

## TABLE OF AUTHORITIES

**Cases**          Page(s)

*Bernardo-De La Cruz v. Garland*,
  114 F.4th 883 (7th Cir. 2024) ............................................................................... 7

*California v. Azar*,
  950 F.3d 1067 (9th Cir. 2020) ..........................................................................7, 10

*Chevron, USA, Inc. v. Natural Resources Defense Council, Inc.*,
  467 U.S. 837 (1984) ...................................................................................... *passim*

*Garcia-Romo v. Barr*,
  940 F.3d 192 (2019) ............................................................................................... 6

*Kentucky v. Yellen*,
  54 F.4th 325 (6th Cir. 2022) ............................................................................ 3, 11

*Kimble v. Marvel Ent., LLC*,
  576 U.S. 446 (2015) ............................................................................................. 10

*Kisor v. Wilkie*,
  588 U.S. 558 (2019) ............................................................................................. 10

*Lake Region Healthcare Corp. v. Becerra*,
  113 F.4th 1002 (D.C. Cir. 2024) .......................................................................... 7

*Loper Bright Enterprises v. Raimondo*,
  144 S. Ct. 2244 (2024) ................................................................................. *passim*

*Mayor of Baltimore v. Azar*,
  973 F.3d 258 (4th Cir. 2020) ................................................................................ 7

*In re MCP No. 185*,
  No. 24-7000, 2024 WL 3517673 (6th Cir. June 28, 2024) ................................. 7

*Oakbrook Land Holdings, LLC v. Comm'r*,
  28 F.4th 700 (2022) ............................................................................................... 6

*Ohio v. Becerra*,
  87 F.4th 759 (6th Cir. 2023) ..........................................................................3, 4, 7

*Oregon v. Becerra*,
    141 S. Ct. 2621 (2021) .................................................................................... 7

*Oregon v. Cochran*,
    141 S. Ct. 1369 (2021) ................................................................................ 7, 8

*Pennhurst State Sch. & Hosp. v. Halderman*,
    451 U.S. 1 (1981) .................................................................................... 3, 11

*Rust v. Sullivan*,
    500 U.S. 173 (1991) ............................................................................ *passim*

*Tennessee v. HHS*,
    No. 3:23-cv-384, 2024 WL 1053247 (E.D. Tenn. Mar. 11, 2024) ........................ 5

*Valent v. Comm'r of Soc. Sec.*,
    918 F.3d 516 (2019) ..................................................................................... 6

*West Virginia v. EPA*,
    597 U.S. 697 (2022) ................................................................................... 11

**Statutes**

42 U.S.C. §300 ................................................................................................ 1, 3

**Other Authorities**

Brief for Respondents, App'x B, *Loper Bright*, No. 22-451 ..................................... 6

## INTRODUCTION AND STATEMENT OF *AMICI* INTEREST

Ohio and 21 other *amici* States have strong interests in protecting their sovereignty as States from federal encroachment. Here, a federal agency, the U.S. Department of Health and Human Services (HHS), seeks to cut Tennessee's funding under the Title X family-planning program. HHS seeks to do so based on a condition that the agency, not Congress, created. Specifically, HHS insists that Tennessee cannot receive funds unless Tennessee refers patients to abortion clinics—even though Title X's statute *forbids* funding programs "where abortion is a method of family planning." 42 U.S.C. §300a-6. HHS says that its statutory reading, even if not the best reading, warrants residual *Chevron* deference. A divided panel agreed with HHS, raising two issues that cry out for en banc review: (1) application of *Loper Bright*'s stare-decisis reservation, and (2) an agency's Spending-Clause power.

First, the full Court should correct the panel's misreading of *Loper Bright Enterprises v. Raimondo*; the panel effectively accorded stare-decisis effect to judicial ambiguity findings, rather than judgments upholding "specific agency actions." 144 S. Ct. 2244, 2273 (2024). When the Supreme Court rejected *Chevron* deference as an "interpretive methodology," *id.*, it instructed courts to find a statute's "single, best meaning" rather than let the agency decide, *id.* at 2266. The

1

Court also preserved "holdings" that "specific agency actions are lawful," *id.* at 2273. But the panel here lopped off the "specific … action" requirement, leaving agency power to adopt a statutory reading of Title X *opposite* to the one that the Supreme Court had reached in *Rust v. Sullivan*, 500 U.S. 173, 184 (1991). In *Rust,* the Court upheld a rule that *barred* Title X grantees from giving abortion referrals. Now, the panel upheld a rule that *requires* abortion referrals. That is not the same "specific agency action," but a general agency power to change its reading of a statute—precisely what *Loper Bright* ended.

That not only gets *Loper Bright* wrong, but runs contrary to the core purposes of stare decisis—stability and reliance. Instead of protecting a stable Title X approach that grantees can rely on, the panel guarantees HHS's power to continue the policy ping-pong that has marked Title X for 40 years. Most important, this holding risks reaching far beyond Title X, giving all federal agencies the kind of power that *Loper Bright* meant to rein in. In sum, *Loper Bright* preserved the actual decisions made pursuant to *Chevron*'s room for agency discretion—it did not preserve agency power to be the decisionmaker indefinitely, nor did it hold that any ambiguity holding renders Congress's work ambiguous for all time. The panel's contrary view calls for review.

Second, the full Court should address the panel's mistaken Spending-Clause holding that HHS, as an agency, may add conditions to funding that Congress did not. That violates the clear statement rule, which requires *statutes* to warn States of strings on spending. *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). And it squarely conflicts with this Court's contrary view in *Kentucky v. Yellen*, 54 F.4th 325, 353–54 (6th Cir. 2022). That holding likewise cries out for review.

## STATEMENT OF FACTS

Title X establishes federal grants to family-planning programs. HHS grants the funds to States and other program operators. 42 U.S.C. §300(a). Congress delegated some power to HHS: grants are "made in accordance with such regulations as the Secretary may promulgate." §300a-4(a). Congress also barred giving funds to programs "where abortion is a method of family planning." §300a-6.

For decades, HHS has zig-zagged in its view of what that funding bar means, both as to the necessary physical and financial separation between a Title X program and an abortion provider, and as to abortion referrals by a Title X program. *Ohio v. Becerra*, 87 F.4th 759, 765–67 (6th Cir. 2023). When HHS *barred* abortion counseling and referrals, under a 1988 rule implementing the statute, the Supreme Court upheld it. *Rust,* 500 U.S. at 184. It held that the statute is "ambiguous" as

to referrals, so it deferred to HHS under *Chevron*. *Id.* at 184–87; *Chevron, USA, Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984). The Court disclaimed "dwell[ing] on the plain language of the statute." *Rust,* 500 U.S. at 184.

HHS abandoned the *Rust*-rule's approach from 1993–2019, re-enacted essentially the *Rust*-approved rule in 2019, and reverted to the non-*Rust* approach in 2021. The new rule *mandates,* rather than bars, abortion referrals.

This Court reviewed, in a preliminary posture, the 2021 rule in *Ohio*. While it held that the lack of separation requirements likely violated the statute, it upheld the referral mandate. 87 F.4th at 780, 771–72. It based that holding on *Rust* and *Chevron,* saying that *Rust*'s characterization of the statute as ambiguous left HHS free to decide on an approach. But it noted two shifting grounds that left the ruling even more tentative than the preliminary posture: *Chevron*'s shaky status, in light of the then-pending *Loper Bright* case, and the "impact of *Dobbs*." *Id.* at 769, 774 n.7.

Meanwhile, HHS acted to defund Tennessee as a Title X grantee. Panel Op. 4. It did so because Tennessee determined that, in light of its post-*Dobbs* law restricting most abortions, its Title X programs would refer only for abortions that would be legal in Tennessee. HHS then cut off funding, following the 2021 Rule.

Tennessee sued, arguing that the statute bars HHS's counseling and referral mandates and that the Spending Clause bars HHS from imposing such conditions. The district court denied preliminary relief, and a divided panel affirmed. *Tennessee v. HHS*, No. 3:23-cv-384, 2024 WL 1053247, *7 (E.D. Tenn. Mar. 11, 2024); Panel Op. 23.

The panel majority relied on two holdings. First, it said that *Loper Bright* did not undercut *Rust*'s *Chevron*-based characterization of the Title X statute as ambiguous, citing *Loper Bright*'s caveat that "specific agency actions" upheld in the *Chevron* era were protected by stare decisis. Panel Op. 14 (citing *Loper Bright*, 144 S. Ct. at 2273). (The panel did not grant Tennessee's request for supplemental briefing when *Loper Bright* arrived.) Thus, said the panel, HHS could now use that ambiguity to mandate, rather than bar, referrals. Panel Op. 16. Second, it held that the Spending Clause did not prevent HHS from imposing the referral mandate as a condition. *Id.* at 10.

Judge Kethledge dissented in part and concurred in part. He opined that the referral mandate "likely violates" Title X under the statute's best reading, and that *Loper Bright*'s stare-decisis reservation did not extend to the 2021 rule, which does the opposite of the "specific agency action[]" of the 1988 rule upheld in *Rust*. *Id.* at 26, 28.

5

# EN BANC REVIEW IS WARRANTED

## I. The full Court should address the scope of *Loper Bright's* stare-decisis reservation for "specific agency actions."

The panel's treatment of *Loper Bright* warrants en banc review both because of its potential broad effect and how wrong it is.

### A. The panel decision could affect agency power under many statutes.

Begin with scope: the panel's broader *Loper Bright* holding risks spillover beyond Title X. First, *Chevron* cast a wide net over its four decades of mandating agency deference. The Supreme Court alone relied on *Chevron* at least 70 times, according to the federal government's *Loper Bright* briefing. *See* Brief for Respondents, App'x B, in *Loper Bright*, No. 22-451. This Court cited it dozens of times, too. *See, e.g., Oakbrook Land Holdings, LLC v. Comm'r*, 28 F.4th 700, 718 (2022); *Garcia-Romo v. Barr*, 940 F.3d 192, 205 (2019); *Valent v. Comm'r of Soc. Sec.*, 918 F.3d 516, 521 (2019). No one doubts that our gridlocked Congress does not update statutes easily. Holding that any time any appellate court has applied *Chevron* to a statute, it has bestowed permanent ambiguity on the law—permanently empowering agencies to regulate in the fog—could embolden federal agencies armed with a *Rust*-like holding to flip-flop as HHS did here. That would not only effectively nullify many statutes; it would snatch the defeat of deference from the jaws of victory.

6

Second, in just months since *Loper Bright,* cases about its meaning—and specifically its stare-decisis reservation—have mushroomed around the country, including in this circuit. The Third, Fifth, Seventh, Ninth, and D.C. Circuits have all addressed *Loper Bright*'s scope. *See, e.g.*, *Lake Region Healthcare Corp. v. Becerra*, 113 F.4th 1002, 1007 (D.C. Cir. 2024); *Bernardo-De La Cruz v. Garland*, 114 F.4th 883, 890 (7th Cir. 2024); TN Pet. 11 n.2 (collecting cases). District courts in this Circuit have issued orders addressing it. TN Pet. 9 n.1 (collecting cases). And it will be an issue in Ohio's ongoing Title X case. *See Ohio*, 87 F.4th at 784. Notably, this Court cited the issue in staying an order of the Federal Communications Commission. *See In re MCP No. 185*, No. 24-7000, 2024 WL 3517673, at *2 (6th Cir. June 28, 2024).

Even if only Title X were at issue, review would be warranted. Multiple circuit and district courts addressed the 2019 rule, which echoed the 1988 rule upheld in *Rust*. *See, e.g., California v. Azar*, 950 F.3d 1067, 1074 (9th Cir. 2020) (en banc) (upholding 2019 Rule); *Mayor of Baltimore v. Azar*, 973 F.3d 258, 296 (4th Cir. 2020) (en banc) (invalidating 2019 Rule). The Supreme Court granted certiorari to resolve that split, but HHS dropped the case in January 2021 and announced its intent to change the rule again. *See Oregon v. Cochran*, 141 S. Ct. 1369 (2021); *Oregon*

*v. Becerra,* 141 S. Ct. 2621 (2021); *Becerra v. Mayor of Baltimore,* 141 S. Ct. 1369 (Mem.) (2021) (all granting certiorari), *cert. dismissed,* 141 S. Ct. 2618 (2021).

### B.   The panel erred.

The panel's view not only might affect myriad cases and an important federal statute, but it is also egregiously wrong. *Loper Bright* broadly abolished administrative deference as an "interpretive methodology." 143 S. Ct. at 2273. But its stare-decisis reservation was narrow and precise: the "holdings of those cases that *specific agency actions* are lawful—including the Clean Air Act holding of *Chevron* itself—are still subject to statutory stare decisis despite our change in interpretive methodology." *Id.* (emphasis added).

On its own terms, then, the Court limited its reservation to "holdings" finding "specific agency actions" "lawful." *Id. Rust* upheld the specific agency action of adopting the 1988 Rule to *bar abortion referrals*, so that should have been the holding *Loper Bright* preserved.

But the panel telescoped out to accord "stare decisis" to *Chevron*'s predicate two-step dance—finding a statute ambiguous, so HHS could choose among competing (reasonable) readings of it—to uphold a 2021 agency action that *mandates referrals*. Panel Op. 14. That is not the same agency action, let alone a "spe-

cific" one. If "specific" includes a diametrically opposed action, it is hard to see what "general" would mean.

Equally important, the panel's view of the stare-decisis reservation conflicts with fundamental principles of stare decisis. Stare decisis serves the purpose of *stability* in law, which in turn protects the *reliance interests* of those who order their affairs around a legal rule. *Loper Bright,* 143 S. Ct. at 2272. Specifically, stare decisis aims to "produce readily foreseeable outcomes and the stability that comes with them." *Id.* Such a "stable background," in turn, "fosters meaningful reliance." *Id.* (quotation omitted).

The panel's view produces the opposite of stability and reliance. A stable view would be for the statute's "single, best meaning" to be judicially declared and enforced, whether in favor of banning abortion referrals (as the upheld 1988 rule and the 2019 rule did), or even if somehow the better reading is HHS's contrary view mandating referrals. *Id.* at 2266. Consider the stability and reliance interests of various parties, even those on competing sides of the controversy. If Tennessee knows the rules of the road, it can know its inclusion or exclusion from the program will be stable, not bound to the political pendulum. Likewise, consider the nation's largest Title X participant, Planned Parenthood. When the Ninth Circuit upheld the 2019 rule, Planned Parenthood quit the program rather than comply with the

9

rule. *California*, 950 F.3d at 1099 n.30. Now, under the latest HHS regime, Planned Parenthood is not only back in, but it received a windfall of *extra* funding in Tennessee when HHS cut off the State of Tennessee. Surely that entity, too, would see more stability from a "single, best meaning," than from the ongoing zigzags. Now, no one can forecast whether their annual funding might be cut off or restored on January 21, 2025.

That leaves, at most, HHS's potential reliance interest in preserving power to swing like a saloon door in interpreting the statute. But no such interest is judicially cognizable. To *amici*'s knowledge, the Supreme Court "has never suggested that the convenience of government officials should count in the balance of *stare decisis*." *Kisor v. Wilkie*, 588 U.S. 558, 629 (2019) (Gorsuch, J., concurring in the judgment).

The Panel's view also contradicts another long-established tenet of stare decisis—the idea that "stare decisis carries enhanced force when a decision … interprets a statute" rather than a constitutional provision. *Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 456 (2015). That assumes that congressional inaction, in light of a court ruling, implicitly "ratifies," or at least accepts, that decision. *Id*. But if the decision does not read the statute, but merely highlights an ambiguity that licenses agency oscillation, which view is Congress accepting? If the answer to that ques-

10

tion reduces to legislative acceptance of an executive branch agency answering all the major policy questions, such a permanent delegation would raise its own constitutional concerns. *West Virginia v. EPA*, 597 U.S. 697, 752 (2022) (Gorsuch, J., concurring).

## II. The full Court should review the Spending-Clause holding because it conflicts with earlier panel precedent and erodes State authority.

The full Court should likewise address the Spending-Clause issue, as the Panel's opinion conflicts with both Supreme Court and Circuit precedent and is wrong, too.

The Supreme Court has reassured States that any funding conditions must be set by *Congress,* through "unambiguous[]" legislation that tells States with a "clear voice" what strings are attached. *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). This Court has also explained that the clear-statement rule means that even under *Chevron,* neither the Court nor a State "must accept as binding an agency regulation establishing an otherwise-uncertain spending-law condition." *Kentucky*, 54 F.4th at 353. The Court rejected there a federal-government claim that the regulation at issue was a mere "implementation detail[]" that carried out statutory intent. *Id.*

This case is far weaker than even *Yellen.* The Panel here acknowledges that the statute does not mandate a referral *requirement*—after all, that would fly in the

11

face of *Rust*'s approval of a referral *ban*—so HHS cannot claim that its rule is an "implementation detail." It must openly embrace its rule as a policy choice, and insist that Congress delegates that choice to HHS to make.

But even if such a delegation were valid as some form of surviving zombie *Chevron,* it would not clear the independent *Spending-Clause problem*, because even if agencies could still make other policy calls, they may not attach strings to federal funds that *sovereign States* must follow.

If agencies accept the Panel Opinion's implicit invitation, then its scope is self-evident. If scores of federal agencies can attach thousands of strings to billions of federal dollars, that is a very big deal. En banc review would be warranted over such a legal earthquake.

## CONCLUSION

The Court should grant Tennessee's petition for rehearing en banc.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ T. Elliot Gaiser*
T. ELLIOT GAISER
Ohio Solicitor General
 **Counsel of Record*
STEPHEN P. CARNEY
Deputy Solicitor General
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
614-466-8980
Thomas.Gaiser@OhioAGO.gov

*Counsel for Amicus Curiae*
 *State of Ohio*

## ADDITIONAL COUNSEL

| | |
|---|---|
| Steve Marshall<br>Alabama Attorney General | Liz Murrill<br>Louisiana Attorney General |
| Treg R. Taylor<br>Alaska Attorney General | Lynn Fitch<br>Mississippi Attorney General |
| Tim Griffin<br>Arkansas Attorney General | Austin Knudsen<br>Montana Attorney General |
| Ashley Moody<br>Florida Attorney General | Michael T. Hilgers<br>Nebraska Attorney General |
| Christopher M. Carr<br>Georgia Attorney General | Alan Wilson<br>South Carolina Attorney General |
| Raúl R. Labrador<br>Idaho Attorney General | Marty Jackley<br>South Dakota Attorney General |
| Theodore E. Rokita<br>Indiana Attorney General | Ken Paxton<br>Texas Attorney General |
| Brenna Bird<br>Iowa Attorney General | Sean D. Reyes<br>Utah Attorney General |
| Kris Kobach<br>Kansas Attorney General | Patrick Morrisey<br>West Virginia Attorney General |
| Russell Coleman<br>Kentucky Attorney General | Bridget Hill<br>Wyoming Attorney General |
| Andrew Bailey<br>Missouri Attorney General | |

## CERTIFICATE OF COMPLIANCE

I hereby certify, in accordance with Rule 32(g) of the Federal Rules of Appellate Procedure, that this brief complies with the type-volume requirements and contains 2,595 words. *See* Fed. R. App. P. 29(a)(5), 32(a)(7).

I further certify that this brief complies with the typeface requirements of Federal Rule 32(a)(5) and the type-style requirements of Federal Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Equity font.

*/s/ T. Elliot Gaiser*
T. ELLIOT GAISER

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2024, this brief was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ T. Elliot Gaiser*
T. ELLIOT GAISER