No. 24-5220

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

STATE OF TENNESSEE,

*Plaintiff-Appellant*

v.

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, XAVIER BECERRA, in his official capacity, OFFICE OF POPULATION AFFAIRS, and JESSICA S. MARCELLA, in her official capacity,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Eastern District of Tennessee
Case No. 3:23-cv-384

**BRIEF OF AMICI CURIAE THE AMERICAN ASSOCIATION OF PRO-LIFE OBSTETRICIANS & GYNECOLOGISTS, THE CHRISTIAN MEDICAL & DENTAL ASSOCIATIONS, THE CATHOLIC MEDICAL ASSOCIATION, AND THE NATIONAL ASSOCIATION OF CATHOLIC NURSES IN SUPPORT OF APPELLANT STATE OF TENNESSEE**

| | |
|---|---|
| John J. Bursch | Christopher P. Schandevel |
| Erin M. Hawley | ALLIANCE DEFENDING FREEDOM |
| ALLIANCE DEFENDING FREEDOM | 44180 Riverside Pkwy |
| 440 First Street, N.W., Suite 600 | Lansdowne, VA 20176 |
| Washington, D.C. 20001 | (571) 707-4655 |
| (202) 393-8690 | cschandevel@ADFlegal.org |
| jbursch@ADFlegal.org | |
| ehawley@ADFlegal.org | Chloe K. Jones |
| | Alliance Defending Freedom |
| | 1000 Hurricane Shoals Rd. NE |
| | Suite D-1100 |
| | Lawrenceville, GA 30043 |
| | (770) 339–0774 |
| | cjones@ADFlegal.org |

*Attorneys for Amici Curiae*

# CORPORATE DISCLOSURE STATEMENT

Amici Curiae, the American Association of Pro-Life Obstetricians & Gynecologists (AAPLOG), the Christian Medical & Dental Associations (CMDA), the Catholic Medical Association (CMA), and the National Association of Catholic Nurses, USA (NACN-USA) state that they have no parent corporation and do not issue stock. Fed. R. App. P. 26.1; 6th Cir. R. 26.1(a).

# TABLE OF CONTENTS

Corporate Disclosure Statement ................................................................. i

Table of Authorities ................................................................................... iii

Interest of Amici Curiae .............................................................................. 1

Introduction ................................................................................................ 3

Argument .................................................................................................... 5

I.  Tennessee is likely to prevail because the 2021 Rule's abortion-referral requirement is contrary to law. ........................... 5

   A.  This Court should interpret Section 1008 because statutory stare decisis does not apply. ................................. 5

   B.  The 2021 Rule contravenes Section 1008 under the correct interpretation of the statute. .................................. 8

II. Tennessee is likely to prevail because the 2021 Rule violates federal conscience protections, and HHS's 2023 Rescindment increases the risk of conscience violations. ...................................... 9

   A.  The referral requirement and the rescindment decision violate the Weldon Amendment. .......................... 10

   B.  An injunction would protect healthcare professionals from being driven out of the practice of medicine. ............................................................................. 12

Conclusion ................................................................................................ 13

Rule 32(g)(1) Certificate of Compliance ................................................... 14

Certificate of Service ................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*California v. Azar*,
　911 F.3d 558 (9th Cir. 2018) ........................................................ 12

*Loper Bright Enterprises v. Raimondo*,
　144 S. Ct. 2244 (2024) ......................................................... 3, 5, 6

*Ohio v. Becerra*,
　87 F.4th 759 (6th Cir. 2023) ................................................ 6, 7, 11

*Oklahoma v. United States Department of Health & Human Services*,
　107 F.4th 1209 (10th Cir. 2024) ................................................. 11

*Owen v. Commissioner*,
　1981 WL 16570 (6th Cir. June 23, 1981) ...................................... 7

*Owen v. Commissioner*,
　714 F.2d 141 (6th Cir. 1983) ........................................................ 7

*Petteway v. Galveston County*,
　111 F.4th 596 (5th Cir. 2024) ...................................................... 8

*Rust v. Sullivan*,
　500 U.S. 173 (1991) ................................................................ 5, 6

*Tennessee v. Becerra*,
　2024 WL 3934560 (6th Cir. Aug. 26, 2024) ................................. 9

**Statutes**

42 U.S.C. § 300a-6 ............................................................................ 3, 9

5 U.S.C. § 706 ................................................................................... 3, 5

Consolidated Appropriations Act, 2005, Pub. L. No. 108-447, tit. V, § 508(d)(1), 118 Stat. 2809 ........................................................ 10

Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, div. D, tit. V, § 507(d)(2), 138 Stat. 460 ........................................ 11

TENN. CODE ANN. § 39-15-213 ................................................................. 4

## **Other Authorities**

Amy Coney Barrett, *Statutory Stare Decisis in the Courts of Appeals*,
    73 GEO. WASH. L. REV. 317 (2005) .................................................... 7

Brittni Fredericksen et al., *A National Survey of OBGYNs'
    Experiences After Dobbs*, Kaiser Family Foundation (2023) ......... 12

*Workforce*, Tennessee Hospital Association ............................................ 12

## **Regulations**

Ensuring Access to Equitable, Affordable, Client-Centered,
    Quality Family Planning Services, 86 Fed. Reg. 56144
    (Oct. 7, 2021) ................................................................... 3, 8, 9, 10

# INTEREST OF AMICI CURIAE[1]

The American Association of Pro-Life Obstetricians & Gynecologists (AAPLOG) is a nonprofit organization with over 7,000 members who are experts in reproductive healthcare. AAPLOG strives to inform medical professionals, the public, and pregnant women about abortion's potential long-term consequences on a woman's health.

The Christian Medical & Dental Associations (CMDA) is a professional association that equips Christian healthcare professionals to glorify God by advancing biblical principles of healthcare. CMDA has nearly 13,000 members and 365 chapters.

The Catholic Medical Association (CMA) is the largest association of Catholic medical professionals. It includes more than 2,400 members, many of whom work at facilities that receive Title X funding. CMA's mission is to enable its members to uphold the Catholic faith in science and medicine. Participating in or referring for direct abortions would violate CMA members' consciences because it violates Catholic Church teaching, the sanctity of human life, medical ethics, and patients' best interests.

---

[1] No party or party's counsel authored this brief in whole or in part or financially supported this brief, and no one other than amici curiae or their counsel contributed money intended to fund preparing or submitting this brief. Fed. R. App. P. 29(c)(5).

The National Association of Catholic Nurses, USA (NACN-USA) is a professional organization of Catholic nurses. NACN-USA focuses on the integration of faith and health and supports the protection of human life from conception (fertilization) to natural death. NACN-USA opposes involvement of any kind in direct abortion because it contradicts Roman Catholic teaching and Hippocratic values.

AAPLOG, CMDA, CMA, and NACN-USA have a keen interest in ensuring that the government respects Congress's refusal to use taxpayer dollars to support abortions and in opposing HHS's efforts to force Title X recipients to counsel and refer for abortions. HHS's unlawful actions threaten to strip funding from pro-life healthcare professionals like amici curiae's members.

# INTRODUCTION

The Administrative Procedure Act requires courts to "decide all relevant questions of law [and] interpret constitutional and statutory provisions." 5 U.S.C. § 706. The APA thus "codifies for agency cases the unremarkable, yet elemental proposition reflected by judicial practice dating back to *Marbury*: that courts decide legal questions by applying their own judgment." *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2261 (2024). Courts must discern a statute's "single, best meaning" using traditional tools of statutory interpretation. *Id.* at 2266. And they "may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Id.* at 2273.

Yet defer to agency bureaucrats is precisely what the government insists the Court must do in this case. The government is wrong.

Section 1008 of the Public Health Service Act prohibits "funds appropriated under" Title X from being "used in programs where abortion is a method of family planning." 42 U.S.C. § 300a-6. Despite this clear prohibition—and federal laws protecting conscience rights—the Department of Health and Human Services imposed a universal requirement that Title X grantees *must* provide information, counseling, and referrals for abortion. Ensuring Access to Equitable, Affordable, Client-Centered, Quality Family Planning Services, 86 Fed. Reg. 56144, 56178–79 (Oct. 7, 2021). That Rule violates Title X's plain meaning, and no amount of deference is warranted.

The Rule also disregards rights of conscience. It unlawfully forces many healthcare professionals to choose between violating their consciences and forgoing generally available public benefits that make it possible for them to serve their patients.

By contrast, Tennessee's decision to *stop* requiring its Title X subgrantees to counsel and refer for abortion complements and reinforces Title X's text. Tennessee law prohibits performing an abortion absent certain exceptions to protect the life and health of the mother. TENN. CODE ANN. § 39-15-213(b), (c)(1)(A). By limiting the requirement to counsel and refer for abortions to these narrow circumstances, Tennessee has diminished the risk that medical professionals will be forced to choose between their consciences and Title X funding. HHS's failure to consider that result before rescinding Tennessee's Title X funding exacerbates the arbitrary and capricious nature of its decision. This Court should grant rehearing en banc and say so.

## ARGUMENT

### I. Tennessee is likely to prevail because the 2021 Rule's abortion-referral requirement is contrary to law.

The APA requires courts to "hold unlawful and set aside" agency actions not in accordance with law. 5 U.S.C. § 706(2)(A). It also requires courts to "decide all relevant questions of law, interpret constitutional and statutory provisions," 5 U.S.C. § 706, and "exercise their independent judgment in deciding whether an agency has acted within its statutory authority," *Loper Bright*, 144 S. Ct. at 2273.

The panel majority erroneously deferred to HHS's reading of Section 1008. It thus contravened the Supreme Court's recent directive in *Loper Bright*: "courts decide legal questions by applying their own judgment." *Id.* at 2261. HHS's interpretation of Section 1008—or its *lack* of interpretation—is "*not* entitled to deference." *Id.* Rather, this Court must "use every tool at [its] disposal to determine the best reading of the statute and resolve the ambiguity." *Id.* at 2266. And the best reading of Section 1008 precludes an abortion-referral requirement.

#### A. This Court should interpret Section 1008 because statutory stare decisis does not apply.

The panel majority's decision to afford statutory stare decisis to *Rust v. Sullivan*, 500 U.S. 173 (1991), turned on *Loper Bright*'s assertion that "prior cases that relied on the *Chevron* framework" are not "call[ed] into question." 144 S. Ct. at 2273. But the panel majority misreads that portion of *Loper Bright*.

5

As Judge Kethledge explained in his dissent, *Loper Bright*'s instruction must be read alongside the next sentence in the opinion: "The holdings of those cases that *specific agency actions* are lawful … are still subject to statutory *stare decisis* despite [the Court's] change in interpretive methodology." *Id.* (emphasis added). The "specific agency action[]" challenged in *Rust* was the 1988 Rule—not the 2021 Rule. And the 1988 Rule *prohibited* counseling and referral for abortions. *Rust*, 500 U.S. at 179–80. So statutory stare decisis says nothing about whether the *opposite* agency action—reflected in the 2021 Rule—is lawful.

This Court's decision in *Ohio v. Becerra* proves that point. 87 F.4th 759 (6th Cir. 2023). As this Court explained there, *Rust* decided only that Section 1008 was ambiguous at *Chevron* step one and deferred to HHS's 1988 interpretation at step two. *Id.* at 770. That meant, in future cases, courts still would have to decide whether *new* HHS rules were "permissible" or "reasonable" at step two. *Id.* Whether the 2021 Rule was a permissible or reasonable reading of Section 1008 was an open question after *Rust*. *Id.* And now, under *Loper Bright*, courts must arrive at the "single, best meaning" of even a previously determined ambiguous statute when confronted with a new agency action—like the 2021 Rule. 144 S. Ct. at 2266. So nothing the Supreme Court said in *Rust* has any statutory stare decisis effect here. And this Court should grant rehearing en banc and interpret Section 1008 de novo.

Importantly, nothing in *Ohio*'s holding that the 2021 Rule is a permissible reading of Section 1008 precludes de novo review either. 87 F.4th at 772. *Ohio* does not implicate statutory stare decisis because that doctrine only applies to Supreme Court decisions. That's because, unlike "the Supreme Court, which settles the meaning of statutes on behalf of the entire judicial department," the courts of appeals, "by virtue of their position in the judicial hierarchy, have different considerations to take into account." Amy Coney Barrett, *Statutory Stare Decisis in the Courts of Appeals*, 73 GEO. WASH. L. REV. 317, 351–52 (2005). And the assumption that Congress acquiesced in a court's interpretation of a statute makes far less sense for courts of appeals than it does for the Supreme Court. *Id.* at 331–35. For these reasons, while "[r]efusing to revisit statutory interpretations" might be appropriate for Supreme Court decisions, it "certainly does not make sense in the courts of appeals." *Id.* at 351–52.[2]

---

[2] Whether statutory stare decisis applies to court of appeals decisions appears to be an open question in this Circuit, which is another reason to grant en banc review. Then-Professor Barrett cites an unpublished opinion from this Court that was later reversed en banc in a summary disposition. Barrett, *supra* at 327 n.58 (citing *Owen v. Comm'r*, No. 78-1341, 1981 WL 16570, at *9 (6th Cir. June 23, 1981), *opinion superseded on reh'g*, 714 F.2d 141 (6th Cir. 1983)). And this Court does not appear to have resolved the issue since.

In sum, "statutory stare decisis is not a compelling barrier to overturning...erroneous statutory interpretations" at the court-of-appeals level. *Petteway v. Galveston Cnty.*, 111 F.4th 596, 613 (5th Cir. 2024) (en banc). *Loper Bright*'s reference to statutory stare decisis does not encompass this Court's decision in *Ohio*. And this Court should rehear this case and interpret Section 1008 de novo.

**B.  This Court should interpret Section 1008 because the 2021 Rule does not.**

*Chevron* deference can't apply to the 2021 Rule for an even more fundamental reason: HHS never purported to interpret Section 1008. In responding to comments that abortion referrals "squarely violated the plain clear text of section 1008," 86 Fed. Reg. at 56149 (cleaned up), HHS engaged in zero statutory analysis. Instead, the agency asserted that "[c]ounseling for abortion, including referral when requested, has never been held to constitute a violation of section 1008," and prohibiting abortion referrals would have been "inconsistent with nearly 40 years of agency practice." 86 Fed. Reg. at 56149–50. The Rule never even quotes Section 1008's language.

**C.  The 2021 Rule contravenes Section 1008 under the correct interpretation of the statute.**

The 2021 Rule's mandate requiring abortion "information," "counseling," and "referral upon request," 86 Fed. Reg. at 56178–79, violates Section 1008 and must be set aside.

Section 1008 prohibits Title X funds from being "used in programs where abortion is a method of family planning." 42 U.S.C. § 300a-6. And the best meaning of "method" is "a deliberate or systematic means of obtaining a particular end." *Tennessee v. Becerra*, No. 24-5220, 2024 WL 3934560, at *14 (6th Cir. Aug. 26, 2024) (Kethledge, J., dissenting). A program that refers pregnant women to abortion providers deliberately and systematically employs a means for obtaining an abortion. Knowing "where to obtain a product or procedure is the first step toward actually obtaining it." *Id.* And providing a "hotline" that could supply the same information has the same effect. *Id.* at *15. The 2021 Rule conflicts with Section 1008. And this Court should rehear this case and hold that it violates Title X's prohibition on using funds "in programs where abortion is a method of family planning." 42 U.S.C. § 300a-6.

II. **Tennessee is likely to prevail because the 2021 Rule violates federal conscience protections, and HHS's 2023 Rescindment increases the risk of conscience violations.**

Tennessee is likely to prevail for another reason: the referral requirement violates laws protecting conscience rights. As HHS has conceded, "Congress has passed several laws protecting the conscience rights of providers, particularly in the area of abortion," and "under these statutes, objecting providers or Title X grantees are not required to counsel or refer for abortions." 86 Fed. Reg. at 56153. Yet the 2021 Rule fails to safeguard federal conscience rights on the front end.

The text of the Rule simply states in a footnote that "[p]roviders *may* separately be covered by federal statutes protecting conscience and/or civil rights." 86 Fed. Reg. at 56178 n.2 (emphasis added). To the extent it matters, the preamble states that "[p]roviders *may* avail themselves of existing conscience protections and file complaints with OCR, which will be evaluated on a case-by-case basis as is done with other complaints." 86 Fed. Reg. at 56156 (emphasis added). So the Rule merely recognizes that healthcare professionals *may* be able to obtain some relief, but only *after* their rights have been violated.

The Rule thus gives short shrift to the reality that referring for abortion makes healthcare professionals complicit in what many view as an immoral procedure. Forcing counseling or referral for a procedure that ends a human life is a serious conscience violation. Federal law prohibits it. And Tennessee is right to do everything it can to avoid it.

### A.  The referral requirement and the rescindment decision violate the Weldon Amendment.

The Weldon Amendment prohibits funds from the Departments of Health, Labor, and Education from flowing to any government or program that discriminates against healthcare professionals or institutional providers for refusing to "provide, pay for, provide coverage for, or refer for abortions." Consolidated Appropriations Act, 2005, Pub. L. No. 108-447, tit. V, § 508(d)(1), 118 Stat. 2809.

HHS violated the Weldon Amendment in two ways. First, it required Tennessee to discriminate against subgrantees. As this Court observed in *Ohio*, HHS "seems to force the States to discriminate on the basis that a health care entity does not refer for abortions, the very thing the Weldon Amendment forbids." 87 F.4th at 774 n.8 (cleaned up).

Second, HHS violated the Weldon Amendment by discriminating against the Tennessee Department of Health. As shown in the district court, the Department is an institutional provider under the Amendment because it provides direct patient services in over 100 Title X clinics. *See* R.1-1, PageID#36; Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, div. D, tit. V, § 507(d)(2), 138 Stat. 460, 703. Thus, "it cannot be discriminated against on the basis that it does not refer patients for abortions." *Oklahoma v. U.S. Dep't of Health & Hum. Servs.*, 107 F.4th 1209, 1234 (10th Cir. 2024) (Federico, J., dissenting).

But that's exactly what HHS did here. In rescinding the state's funding for refusing to refer patients to a national abortion hotline, HHS violated the Amendment. After all, the only time Tennessee would refer a patient to the hotline is when she requests information about the one unlawful family-planning option in the state—abortion. *Id.* at 1235. So HHS "discriminated against a health care entity that programmatically determined that it could not follow the referral requirement because doing so would violate state law and policy." *Id.* at 1233. And that exceeded HHS's legal authority and was arbitrary and capricious.

11

## B. An injunction would protect healthcare professionals from being driven out of the practice of medicine.

"Protecting religious liberty and conscience is obviously in the public interest." *California v. Azar*, 911 F.3d 558, 582 (9th Cir. 2018). An injunction restoring Tennessee's Title X funding would help protect the conscience rights of healthcare professionals across the state—and it would help secure healthcare access for Tennesseans, especially for those living in rural communities already facing healthcare shortages. *See Workforce*, Tennessee Hospital Association, perma.cc/P5DK-U9KD.

If Tennessee capitulates to HHS's illegal demands, healthcare professionals who conscientiously object to counseling or referring for abortion may be forced to stop providing Title X services like fertility education and treatment. In states like Tennessee with laws that protect life from conception, about 30 percent of OBGYNs do not provide counseling or referrals for abortions. Brittni Fredericksen et al., *A National Survey of OBGYNs' Experiences After Dobbs*, Kaiser Family Foundation (2023), perma.cc/BV8Q-JG6R. The 2021 Rule threatens to force these healthcare professionals out of the practice entirely, depriving Tennesseans of vital healthcare services from healthcare professionals dedicated to doing no harm to patients or their children. The public interest thus favors an injunction restoring Tennessee's Title X funding without requiring compliance with HHS's illegal abortion counseling and referral mandate.

## CONCLUSION

This Court should grant en banc review.

Dated: October 16, 2024  Respectfully submitted,

/s/ Christopher P. Schandevel

John J. Bursch  Christopher P. Schandevel
Erin M. Hawley  ALLIANCE DEFENDING FREEDOM
ALLIANCE DEFENDING FREEDOM  44180 Riverside Pkwy
440 First Street, N.W.  Lansdowne, VA 20176
Suite 600  (571) 707-4655
Washington, D.C. 20001  cschandevel@ADFlegal.org
(202) 393-8690
jbursch@ADFlegal.org  Chloe K. Jones
ehawley@ADFlegal.org  ALLIANCE DEFENDING FREEDOM
 1000 Hurricane Shoals Rd. NE
 Suite D-1100
 Lawrenceville, GA 30043
 (770) 339–0774
 cjones@ADFlegal.org

*Attorneys for Amici Curiae*

# RULE 32(G)(1) CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Fed. R. App. P. 29(b)(4) because it contains 2,578 words, excluding parts of the brief exempted by Fed. R. App. P. 32(f) and 6th Cir. R. 32(b).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in Word 365 using a proportionally spaced typeface, 14-point Century Schoolbook font.

Dated: October 16, 2024

<u>*/s/ Christopher P. Schandevel*</u>
Christopher P. Schandevel
*Attorney for Amici Curiae*

**CERTIFICATE OF SERVICE**

    I hereby certify that on October 16, 2024, I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

                                          */s/Christopher P. Schandevel*
                                          Christopher P. Schandevel
                                          *Attorney for Amici Curiae*