No. 24-5220

# In the United States Court of Appeals for the Sixth Circuit

---

STATE OF TENNESSEE,

Plaintiff-Appellant,

v.

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, XAVIER BECERRA, in his official capacity, OFFICE OF POPULATION AFFAIRS, and JESSICA S. MARCELLA, in her official capacity,

Defendants-Appellees.

---

On Appeal from the United States District Court
for the Eastern District of Tennessee,
Case No. 3:23-cv-384

---

**BRIEF OF *AMICUS CURIAE*
ETHICS AND PUBLIC POLICY CENTER
IN SUPPORT OF PLAINTIFF-APPELLANT'S
PETITION FOR REHEARING EN BANC**

---

Eric N. Kniffin
Rachel N. Morrison
Ethics & Public Policy Center
1730 M Street, N.W.
 Suite 910
Washington, DC 20036
(202) 682-1200
ekniffin@eppc.org

*Counsel for* Amicus Curiae

October 16, 2024

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Sixth Circuit Rule 26.1(a), *Amicus Curiae* Ethics and Public Policy Center is a non-profit 501(c)(3) organization and has no corporate parent and is not owned in whole or in part by any publicly held corporation.

# TABLE OF CONTENTS

Page

STATEMENT OF INTEREST OF *AMICUS CURIAE* ............................ 1

INTRODUCTION AND SUMMARY OF THE ARGUMENT .................. 1

ARGUMENT ................................................................................................ 3

    The Biden-Harris administration is using federal agencies to unlawfully promote abortion and interfere with state abortion laws. ....................................................................................................... 3

        A. Turning Taxpayer Dollars into Abortion Funds ...................... 3

        B. Turning Hospital Emergency Rooms into Abortion Clinics ..... 5

        C. Turning VA Hospitals into Abortion Clinics ............................ 6

        D. Turning the U.S. Postal Service into an Abortion Drug Delivery Service ...................................................................... 7

        E. Turning Pharmacies into Abortion Drug Dispensaries ........... 8

        F. Turning HIPAA's Privacy Protections into a Shield Against Laws Regulating Abortion ....................................................... 9

        G. Turning Workplace Pregnancy Accommodations into an Abortion Mandate ................................................................. 10

CONCLUSION ......................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*All. for Hippocratic Med. v. FDA*,
  No. 23-10362, 2023 WL 2913725 (5th Cir. Apr. 12, 2023) .................... 8

*Dobbs v. Jackson Women's Health Org.*,
  597 U.S. 215 (2022) ........................................................................... 3

*Texas v. Becerra*,
  89 F.4th 529 (5th Cir. 2024) ............................................................... 6

*Texas v. HHS*,
  681 F.Supp.3d 665 (W.D. Tex. 2023) ................................................. 9

**Statutes**

10 U.S.C. § 1093 ................................................................................... 5

18 U.S.C. § 13 ....................................................................................... 7

18 U.S.C. § 1461 ................................................................................... 7

18 U.S.C. § 1462 ................................................................................... 7

20 U.S.C. § 1688 ................................................................................... 9

42 U.S.C. § 1395dd ............................................................................... 6

42 U.S.C. § 18023 ................................................................................. 9

42 U.S.C. § 2000gg ............................................................................. 10

Pub. L. No. 102-585, 106 Stat. 4943 (1992) .......................................... 7

**Other Authorities**

168 Cong. Rec. S7050 (daily ed. Dec. 8, 2022) ..................................... 11

Application of the Hyde Amend. to the Provision of Transp. for
  Women Seeking Abortions, 46 Op. O.L.C. ___ (Sept. 27, 2022) ............ 4

Letter from Marco Rubio, U.S. Sen., to Kiran Ahuja, Dir., OPM (July 5, 2022) ............................................................................................... 4

Letter from Xavier Becerra, Sec'y, HHS, and Chiquita Brooks-LaSure, Adm'r, CMS, HHS to Governors (Aug. 26, 2022) .................... 5

Mem. from Lloyd Austin, Sec'y of Def., DOD, to Senior Pentagon Leadership, Commanders of the Combatant Commands, Def. Agency and DOD Field Activity Dirs., on Ensuring Access to Reprod. Health Care (Oct. 20, 2022) ..................................................... 5

OPM, Availability of Sick Leave for Travel to Access Med. Care (June 27, 2022) ........................................................................................ 4

Press Release, HHS, HHS Issues Guidance to the Nation's Retail Pharmacies Clarifying Their Obligations to Ensure Access to Comprehensive Reproductive Health Care Services (July 13, 2022) ............................................................................................................ 8

Press Release, HHS, HHS Secretary Becerra's Statement on Supreme Court Ruling in Dobbs v. Jackson Women's Health Organization (June 24, 2022) ............................................................... 2

White House, FACT SHEET: President Biden Announces Actions in Light of Today's Supreme Court Decision on Dobbs v. Jackson Women's Health Organization (June 24, 2022) .................................. 7

White House, FACT SHEET: President Biden to Sign Executive Order Protecting Access to Reproductive Health Care Services (July 8, 2022) .............................................................................. 2, 4

White House, FACT SHEET: President Biden to Sign Memorandum on Ensuring Safe Access to Medication Abortion (Jan. 22, 2023) ......................................................................................... 7

White House, Press Briefing by Press Sec'y Karine Jean-Pierre and NSC Coordinator for Strategic Communications John Kirby (July 17, 2023) ............................................................................................... 5

iv

**Regulations**

45 C.F.R. §164.512 ................................................................................... 9

EEOC, Implementation of the Pregnant Workers Fairness Act,
   89 Fed. Reg. 29,096 (April 19, 2024) ................................................... 11

HHS, HIPAA Priv. Rule to Support Reprod. Health Care Priv.,
   89 Fed. Reg. 32,976 (Apr. 26, 2024) .................................................... 10

VA, Reprod. Health Servs.,
   87 Fed. Reg. 55,287 (Sept. 9, 2022) ...................................................... 7

VA, Reprod. Health Servs.,
   89 Fed. Reg. 15,451 (Mar. 4, 2024) ....................................................... 7

## STATEMENT OF INTEREST OF *AMICUS CURIAE*[1]

The Ethics and Public Policy Center (EPPC) is a nonprofit research institution dedicated to applying the Judeo-Christian moral tradition to critical issues of public policy, law, culture, and politics. EPPC works to promote a culture of life in law and policy and to defend the dignity of the human being from conception to natural death. Scholars in EPPC's HHS Accountability Project submit public comments on Department of Health and Human Services (HHS) rulemaking—including for Title X—and urge HHS to follow the law and protect unborn human life.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

As Tennessee notes in its Petition for Rehearing En Banc, this case "highlights what happens with federal agencies' power creep goes unchecked." Pet. at 1. Though this case centers on whether Congress granted HHS authority to rescind Tennessee's Title X funding, how the Sixth Circuit rules here will have important ramifications for how courts decide *other* challenges to unlawful uses of executive power.

---

[1] All parties received timely notice and consented to the filing of this brief. Only *amicus* and its counsel authored any part of this brief and made a monetary contribution to fund its preparation or submission.

1

The Biden-Harris administration's post-*Dobbs* pro-abortion agenda demonstrates why this case is critical. The day *Dobbs* was issued, Biden announced "actions" his administration would take in response.[2] He "committed to doing everything in his power" to "protect access" to abortion.[3] HHS Secretary Becerra followed suit, promising to "double down and use every lever we have to protect access to abortion."[4] He directed HHS "to do any and everything" to fulfill that promise.[5]

This brief summarizes actions that HHS and other federal agencies took post-*Dobbs*, conveniently discovering never-before-found authority to advance the administration's pro-abortion political agenda and override state pro-life laws. These actions demonstrate why it is critical that the Court grant en banc review and correct the panel's improper deference to HHS.

---

[2] White House, FACT SHEET: President Biden Announces Actions in Light of Today's Supreme Court Decision on Dobbs v. Jackson Women's Health Organization (June 24, 2022), https://perma.cc/66T6-BL87.

[3] White House, FACT SHEET: President Biden to Sign Executive Order Protecting Access to Reproductive Health Care Services (July 8, 2022), https://perma.cc/F5ZZ-XGL8.

[4] Press Release, HHS, HHS Secretary Becerra's Statement on Supreme Court Ruling in Dobbs v. Jackson Women's Health Organization (June 24, 2022), https://perma.cc/89AZ-RFL4.

[5] *Id.*

2

## ARGUMENT

**The Biden-Harris administration is using federal agencies to unlawfully promote abortion and interfere with state abortion laws.**

Since *Dobbs*, the Biden-Harris administration is using federal agencies like HHS to promote an abortion-at-all-costs agenda while sidestepping "the people and their elected representatives." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 259 (2022). The Rescindment is just one example.[6]

### A.  Turning Taxpayer Dollars into Abortion Funds

The Biden-Harris administration has ignored federal law and mandated that taxpayer dollars fund abortion.

***Hyde Amendment.*** The Hyde Amendment ensures that no HHS funds "shall be expended for any abortion" or "for health benefits coverage that includes coverage of abortion."[7] But the Biden-Harris

---

[6] Each example below is described in greater detail in EPPC's panel amicus brief (EPPC Panel Br.). *See* https://eppc.org/wp-content/uploads/2024/04/6th-Cir-brief-TN-v.pdf.

[7] Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, § 506(a)-(b), 136 Stat. 4459, 4908.

3

administration now claims that taxpayer dollars can and should be used to fund abortion.[8]

***Sick Leave.*** Three days after *Dobbs*, the Office of Personnel Management (OPM) claimed that paid sick leave for federal workers covers absences for necessary travel to obtain medical examinations or treatments.[9] A subsequent White House Fact Sheet confirmed that this guidance authorizes sick leave for abortion travel.[10]

***Medicaid.*** In August 2022, Becerra invited governors, "in light of … *Dobbs*," to apply for Medicaid 1115 waivers to use federal funding to

---

[8] Application of the Hyde Amend. to the Provision of Transp. for Women Seeking Abortions, 46 Op. O.L.C. ___ (Sept. 27, 2022), https://perma.cc/QTQ3-TBT6.

[9] OPM, Availability of Sick Leave for Travel to Access Med. Care (June 27, 2022), https://perma.cc/J4U8-MHDD; *see also* Letter from Marco Rubio, U.S. Sen., to Kiran Ahuja, Dir., OPM (July 5, 2022), https://perma.cc/YL64-GXGY (asking whether policy covers abortion travel, which would violate the Hyde Amendment).

[10] White House, FACT SHEET: President Biden to Sign Executive Order Protecting Access to Reproductive Health Care Services (July 8, 2022), https://perma.cc/F5ZZ-XGL8.

"expand access" to abortion.[11] Becerra said this was "a priority for HHS."[12]

***Military Funds.*** In October 2022, the Department of Defense (DOD) announced that, despite the statutory prohibition of using military funds for abortion, *see* 10 U.S.C. §1093, DOD would transport service members to obtain abortions and pay for its doctors to get abortion licenses.[13] The Biden-Harris administration claims a "foundational, sacred obligation" to ensure DOD personnel can access elective abortions.[14]

B. **Turning Hospital Emergency Rooms into Abortion Clinics**

Weeks after *Dobbs*, HHS's Centers for Medicare and Medicaid Services (CMS) issued new guidance and Becerra sent a letter to

---

[11] Letter from Xavier Becerra, Sec'y, HHS, and Chiquita Brooks-LaSure, Adm'r, CMS, to Governors (Aug. 26, 2022), https://perma.cc/9WRA-3DEU.

[12] *Id.*

[13] Mem. from Lloyd Austin, Sec'y of Def., DOD, to Senior Pentagon Leadership, Commanders of the Combatant Commands, Def. Agency and DOD Field Activity Dirs., on Ensuring Access to Reprod. Health Care (Oct. 20, 2022), https://perma.cc/R4PY-R2AS.

[14] White House, Press Briefing by Press Sec'y Karine Jean-Pierre and NSC Coordinator for Strategic Communications John Kirby (July 17, 2023), https://perma.cc/9ANX-XC5P.

healthcare providers claiming that the Emergency Medical Treatment and Labor Act (EMTALA) could require physicians to perform or complete abortions and preempt state abortion laws.[15]

EMTALA never mentions abortion and no prior administration has declared that EMTALA mandates abortions. *See Texas v. Becerra*, 89 F.4th 529, 546 (5th Cir. 2024) ("EMTALA does not mandate medical treatments, let alone abortion care, nor does it preempt [state] law."), *cert. denied* No. 23-1076 (U.S. Oct. 7, 2024). In contrast, EMTALA explicitly acknowledges the "unborn child" four times, requiring hospitals to stabilize both the mother *and* her unborn child. 42 U.S.C. §§1395dd(c)(1)(A)(ii), (c)(2)(A), (e)(1)(A)(i), (e)(1)(B)(ii).

### C. Turning VA Hospitals into Abortion Clinics

In September 2022, the U.S. Department of Veterans Affairs (VA) issued an Interim Final Rule (IFR), finalized March 2024, claiming that the VA could provide abortions at VA hospitals and clinics in any state,

---

[15] Mem. from CMS, on Reinforcement of EMTALA Obligations Specific to Patients Who Are Pregnant or Are Experiencing Pregnancy Loss (July 11, 2022) (rev. Aug. 25, 2022), https://perma.cc/ND68-86SK; Letter from Xavier Becerra, Sec'y, HHS, to Health Care Providers (July 11, 2022), https://perma.cc/3DD4-RWVP.

for any reason, through all nine months of pregnancy, regardless of any state abortion laws.[16]

Never mind that the Veterans Health Care Act of 1992 bars the VA from providing abortions and the Assimilative Crimes Act affirms that state criminal laws (including laws prohibiting abortion and regulating the practice of medicine) apply to actions within federal government buildings. *See* EPPC Panel Br. at 17-20.

### D. Turning the U.S. Postal Service into an Abortion Drug Delivery Service

After *Dobbs*, Biden directed Becerra to ensure women have "access" to abortion drugs "no matter where they live"[17] and to make these drugs "as widely accessible as possible," including by mail.[18]

Federal law prohibits using the mail to transport abortion drugs. 18 U.S.C. §§1461-62. Nevertheless, the Department of Justice claimed in December 2022 that federal law does not restrict mailing abortion drugs

---

[16] 87 Fed. Reg. 55,287; 89 Fed. Reg. 15,451.

[17] White House, FACT SHEET: President Biden to Sign Memorandum on Ensuring Safe Access to Medication Abortion (Jan. 22, 2023), https://perma.cc/U9Q8-S9QT.

[18] White House, FACT SHEET: President Biden Announces Actions in Light of Today's Supreme Court Decision on Dobbs v. Jackson Women's Health Organization (June 24, 2022), https://perma.cc/53SQ-VM42.

when the sender "lacks the intent that the recipient of the drugs will use them unlawfully."[19] As the Fifth Circuit rightly observed, HHS is essentially arguing that federal law "does not mean what it says it means." *All. for Hippocratic Med. v. FDA*, No. 23-10362, 2023 WL 2913725, at *20–21 (5th Cir. Apr. 12, 2023) (per curiam), *overruled on other grounds*, 602 U.S. 367, 374 (2024) (finding no standing and not weighing in on the merits).

### E.   Turning Pharmacies into Abortion Drug Dispensaries

Three days after Biden directed HHS "to protect and expand access to … medication abortion,"[20] HHS issued new guidance claiming pharmacies must stock and dispense abortion drugs under Section 1557 of the Affordable Care Act (ACA), which prohibits sex discrimination.[21]

---

[19] Application of the Comstock Act to the Mailing of Prescription Drugs That Can Be Used for Abortions, 46 Op. O.L.C. __, slip op. at 1–2 (Dec. 23, 2022), https://perma.cc/9VEU-L96K.

[20] Exec. Ord. No. 14,076, Protecting Access to Reprod. Healthcare Servs., 87 Fed. Reg. 42,053 (July 8, 2022).

[21] Press Release, HHS, HHS Issues Guidance to the Nation's Retail Pharmacies Clarifying Their Obligations to Ensure Access to Comprehensive Reproductive Health Care Services (July 13, 2022), https://perma.cc/67LZ-JQTS.

HHS ignores that the ACA does not preempt state abortion laws, 42 U.S.C. §18023(c), and that Title IX, incorporated into Section 1557 by reference, does not require any entity to provide abortion services, 20 U.S.C. §1688.

As a federal district court reviewing Texas' challenge to this guidance noted, this administration "has, before and since *Dobbs,* openly stated its intention to operate by fiat to find non-legislative workarounds to Supreme Court dictates," which amounts to "a breach of constitutional constraints." *Texas v. HHS,* 681 F.Supp.3d 665, 684 (W.D. Tex. 2023).

### F. Turning HIPAA's Privacy Protections into a Shield Against Laws Regulating Abortion

Under HIPAA, "A covered entity may … disclose [protected health information (PHI)] to the extent that such … disclosure is required by law and the … disclosure complies with and is limited to the relevant requirements of such law." 45 C.F.R. §164.512(a)(1). But HHS's new HIPPA Privacy Rule, finalized April 2024, creates byzantine new procedures that covered entities must navigate before they can comply

with lawful requests for PHI tangentially related to "reproductive health care."[22]

For example, a hospital cannot comply with "a court ordered warrant demanding PHI potentially related to reproductive health care" unless law enforcement convinces the hospital that the "reproductive health care" at issue "was not lawful."[23] If the police decline to elaborate because "doing so would jeopardize an ongoing criminal investigation," HHS says the hospital must refuse to comply.[24]

### G. Turning Workplace Pregnancy Accommodations into an Abortion Mandate

In December 2022, Congress passed the Pregnant Workers Fairness Act (PWFA),[25] which requires employers, including states, to provide their employees "reasonable accommodations" for "the known limitations related to the pregnancy, childbirth, or related medical conditions." 42 U.S.C. §2000gg-1(1).

---

[22] 89 Fed. Reg. 32,976.

[23] *Id.* at 33,032.

[24] *Id.*

[25] Consolidated Appropriations Act, 2023, Pub. L. 117-328, Division II, 136 Stat. 4459, 6084 (2022) (codified at 42 U.S.C. §§2000gg–2000gg-6).

10

Democrat and Republican Senate co-sponsors rejected concerns that the PWFA might require abortion accommodations.[26] Yet the EEOC's April 2024 final rule claims that employers must accommodate their employees' abortions, even when unlawful under state law or against the conscience of the employer.[27]

\* \* \*

The Biden-Harris administration has used federal agencies to promote abortion at the expense of federal law and state sovereign interests. This pattern of unlawful administrative actions, of which the Rescindment is but one example, illustrates the need for en banc review.

---

[26] 168 Cong. Rec. S7050 (daily ed. Dec. 8, 2022) (Sen. Casey) ("[U]nder the [PWFA], … the EEOC, could not—could not—issue any regulation that requires abortion leave…."); *id.* (Sen. Cassidy) ("I reject the characterization that this would do anything to promote abortion.").

[27] 89 Fed. Reg. 29,096.

## CONCLUSION

The Court should grant rehearing en banc.

                    Respectfully submitted,

                    <u>s/ Eric N. Kniffin</u>
                    ERIC N. KNIFFIN
                    RACHEL N. MORRISON
                    ETHICS & PUBLIC POLICY CENTER
                    1730 M Street, N.W.
                     Suite 910
                    Washington, DC 20036
                    (202) 682-1200
                    ekniffin@eppc.org

                    *Counsel for* Amicus Curiae

October 16, 2024

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Fed. R. App. P. 29(a)(5) because this brief contains 1,898 words, excluding parts of the brief exempted by Fed. R. App. P. 32(f) and 6 Cir. R. 32(b).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in Microsoft Word Version 2309 using a proportionally spaced typeface, 14-point Century Schoolbook.

Dated: October 16, 2024

s/ Eric N. Kniffin
Eric N. Kniffin
*Counsel for* Amicus Curiae

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2024, I electronically filed the foregoing brief with the Clerk off the Court for the United States Court of Appeals for the Sixth Circuit using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.