**No. 24-5220**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

———————————

STATE OF TENNESSEE,
*Plaintiff-Appellant,*

v.

XAVIER BECERRA, in his official capacity as
Secretary of Health and Human Services; UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES; JESSICA S. MARCELLA, in her official
capacity as Deputy Assistant Secretary for Population Affairs; OFFICE OF
POPULATION AFFAIRS,
*Defendants-Appellees.*

———————————

On Appeal from the United States District Court
for the Eastern District of Tennessee

———————————

**OPPOSITION TO PETITION FOR REHEARING EN BANC**

———————————

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney
  General*

FRANCIS M. HAMILTON III
  *United States Attorney*

MICHAEL S. RAAB
COURTNEY L. DIXON
BRIAN J. SPRINGER
  *Attorneys, Appellate Staff
  Civil Division, Room 7246
  U.S. Department of Justice
  950 Pennsylvania Avenue, NW
  Washington, DC 20530
  (202) 353-8189*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................... 1

STATEMENT ............................................................................................................ 2

ARGUMENT ............................................................................................................. 6

    I.    The Statutory Authority Issue Does Not Warrant
        En Banc Review ........................................................................................ 6

    II.   The Spending Clause Issue Does Not Warrant
        En Banc Review ...................................................................................... 10

CONCLUSION ........................................................................................................ 15

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                           **Page(s)**

*Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.,*
570 U.S. 205 (2013) ........................................................ 14

*Bennett v. Kentucky Dep't of Educ.,*
470 U.S. 656 (1985) ........................................................ 11

*Biden v. Missouri,*
595 U.S. 87 (2022) ...................................................... 11, 12

*City & Cnty. of San Francisco v. Trump,*
897 F.3d 1225 (9th Cir. 2018) ........................................ 14

*Cummings v. Premier Rehab Keller, P.L.L.C.,*
596 U.S. 212 (2022) ........................................................ 10

*Dobbs v. Jackson Women's Health Org.,*
597 U.S. 215 (2022) .......................................................... 4

*Kentucky v. Yellen,*
54 F.4th 325 (6th Cir. 2022) .......................................... 13

*Loper Bright Enters. v. Raimondo,*
144 S. Ct. 2244 (2024) ............................................... 5, 7, 8

*Lopez v. Garland,*
116 F.4th 1032 (9th Cir. 2024) ........................................ 8

*Ohio v. Becerra,*
87 F.4th 759 (6th Cir. 2023) ......................................... 5, 7

*Oklahoma v. HHS,*
107 F.4th 1209 (10th Cir. 2024), *emergency application denied,*
No. 24A146, 2024 WL 4022552 (U.S. Sept. 3, 2024) ............................ 1, 6, 9, 10, 12

*Pennhurst State Sch. & Hosp. v. Halderman,*
451 U.S. 1 (1981) ............................................................ 11

*Rust v. Sullivan,*
500 U.S. 173 (1991) .................................................. 5, 7, 8, 14

*South Dakota v. Dole,*
483 U.S. 203 (1987) ........................................................ 10

*Texas Educ. Agency v. U.S. Dep't of Educ.*,
  992 F.3d 350 (5th Cir. 2021) .................................................. 14

*Texas v. Yellen*,
  105 F.4th 755 (5th Cir. 2024) ................................................ 13

*Virginia Dep't of Educ. v. Riley*,
  106 F.3d 559 (4th Cir. 1997) ................................................. 14

*West Virginia ex rel. Morrisey v. U.S. Dep't of Treasury*,
  59 F.4th 1124 (11th Cir. 2023) .............................................. 13

## U.S. Constitution:

Art. I, § 8, cl. 1 ........................................................................ 10

## Statutes:

Title X of the Public Health Service Act,
  Pub. L. No. 91-572, § 2(1), 84 Stat. 1504, 1504 (1970) ..............2
      42 U.S.C. § 254b(k)(3)(N) .............................................. 12
      42 U.S.C. § 300(a) ..................................................... 2, 10
      42 U.S.C. § 300a-4(a) ............................................... 2, 10
      42 U.S.C. § 300a-4(b) ............................................... 2, 11
      42 U.S.C. § 300a-6 ......................................................... 2

42 U.S.C. § 802(f) ..................................................................... 13

42 U.S.C. § 1395x(e)(9) ...........................................................11

42 U.S.C. § 1793(f)(2) .............................................................. 12

49 U.S.C. § 5309(c)(4) ............................................................. 12

Ten. Code Ann. § 39-15-213 .....................................................4

## Regulations:

42 C.F.R. § 59.7 ....................................................................... 3

42 C.F.R. § 59.8 ....................................................................... 3

42 C.F.R. § 59.8(a) ................................................................... 3

42 C.F.R. § 59.8(b) ........................................................................... 3

42 C.F.R. § 59.9 .............................................................................. 3

**Rule:**

6th Cir. I.O.P. 35(a) .......................................................................6

**Other Authorities:**

53 Fed. Reg. 2922, 2923 (Feb. 2, 1988) ............................................ 3

65 Fed. Reg. 41,281 (July 3, 2000) ............................................... 2, 3

86 Fed. Reg. 56,144 (Oct. 7, 2021) ................................................. 3

**INTRODUCTION**

This case concerns the Title X program, which has provided federal grants for family-planning services since 1970. Congress authorized the Department of Health and Human Services (HHS) to administer the program and to set the conditions under which funds are disbursed to grantees. One such condition, which has been in effect for most of the program's history, is that Title X projects offer pregnant patients the opportunity to receive nondirective counseling about all options, including abortion, as well as factual information about where a service can be obtained if requested.

The Tennessee Department of Health—a longstanding Title X grantee—applied for and accepted Title X funds while this requirement was in place but then later refused to comply with this condition. As a result, HHS declined to award it continued grant funds. This Court affirmed the district court's denial of Tennessee's request for a preliminary injunction to compel HHS to issue continued funding despite Tennessee's stated refusal to comply with program requirements. That decision is correct, and it is consistent with a recent ruling by the Tenth Circuit rejecting a materially identical challenge brought by an Oklahoma state entity. *See Oklahoma v. HHS*, 107 F.4th 1209 (10th Cir. 2024), *emergency application denied*, No. 24A146, 2024 WL 4022552 (U.S. Sept. 3, 2024).

Tennessee's contrary arguments would undermine settled law and bring this Court into conflict with the only other court of appeals to have considered the issue.

Although Tennessee relies heavily on Justice Kethledge's dissent from the panel's decision, even accepting Judge Kethledge's reasoning would not entitle Tennessee to the extraordinary relief that it seeks in this preliminary posture. The petition for rehearing en banc should be denied.

## STATEMENT

**A.** Congress enacted Title X of the Public Health Service Act to make "comprehensive voluntary family planning services readily available to all persons desiring such services." Pub. L. No. 91-572, § 2(1), 84 Stat. 1504, 1504 (1970). The Act authorizes HHS to award grants to public and private nonprofit entities to fund "voluntary family planning projects" that "offer a broad range" of "family planning methods and services." 42 U.S.C. § 300(a). Grants "shall be made in accordance with such regulations as the Secretary may promulgate," *id.* § 300a-4(a), and "shall be payable . . . subject to such conditions as the Secretary may determine to be appropriate to assure that such grants will be effectively utilized for the purposes for which made," *id.* § 300a-4(b). Section 1008 of the Act provides that "[n]one of the funds appropriated . . . shall be used in programs where abortion is a method of family planning." *Id.* § 300a-6.

Consistent with Section 1008, HHS has understood that Title X projects may not offer, "promote[]," or "encourage[]" abortions but may provide pregnant patients "complete factual information about all medical options," including abortion. *See* 65 Fed. Reg. 41,281, 41,281 (July 3, 2000). For much of the Title X program's history,

HHS has required—as it does now—that Title X projects offer pregnant patients the choice to be provided information and nondirective counseling about their options, followed by a referral for any of these services if the patient requests. *See* 53 Fed. Reg. 2922, 2923 (Feb. 2, 1988) (describing regulatory history). Any referral may consist of "relevant factual information" such as "the name, address [and] telephone number" of a provider, but Title X projects may not take "further affirmative action (such as negotiating a fee reduction, making an appointment, providing transportation) to secure abortion services for the patient." 65 Fed. Reg. at 41,281. In reinstating these requirements in 2021, HHS explained that they enable "healthcare providers to offer complete and medically accurate information and counseling to their clients" and "are critical for the delivery of quality, client-centered care." 86 Fed. Reg. 56,144, 56,154 (Oct. 7, 2021).

HHS has broad discretion to allocate congressionally appropriated Title X grant funds among competing applicants. *See* 42 C.F.R. §§ 59.7, 59.8. Title X grants are generally made for an initial one-year period, and HHS may issue further "continuation awards" that are funded one year at a time but that allow the recipient to receive continued support beyond the initial one-year period without having to reenter the competitive funding process. *See id.* § 59.8(a), (b). Recipients must spend Title X funds for the purpose for which they were granted and in accordance with applicable regulations. *See id.* § 59.9.

**B.**  The Tennessee Department of Health has been a longstanding recipient of Title X grants, including during the years in which HHS regulations have required projects to offer nondirective options counseling and referrals.  *See* Goodwin Decl., R. 1-4, PageID#102.  Most recently, HHS awarded the Tennessee Department of Health a Title X grant from April 2022 to March 2023.  *See* 2022 Notice of Award, R. 1-7, PageID#170.  The award made clear that compliance with HHS's regulations was a condition of Tennessee's continued receipt of Title X funds.  *See id.*, PageID#170-73.

In February 2023, Tennessee informed HHS that it would no longer offer Title X patients the opportunity to receive information and nondirective counseling about abortion after an abortion restriction took effect in the State following the Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022). *See* Ten. Code Ann. § 39-15-213; *see also* Feb. 13, 2023 Letter, R. 1-3, PageID#98-99. Tennessee declined alternative arrangements suggested by HHS, including that Tennessee could provide Title X patients with the number for a call-in hotline where operators would supply the requisite factual information.  *See* Mar. 1, 2023 Letter, R. 1-9, PageID#190.  Because Tennessee's Title X project was "not in compliance with the Title X regulatory requirements and, therefore, the terms and conditions of [its] grant," Mar. 20, 2023 Letter, R. 1-11, PageID#195, HHS declined to issue a continuation award, *see* 2023 Notice of Award, R. 1-12, PageID#198.

**C.**  Tennessee filed this suit and moved for a preliminary injunction, seeking to reinstate its Title X funding.  The district court denied Tennessee's motion,

concluding that Tennessee "has no chance of success on the merits" and that Tennessee's loss of "a very small fraction" of the federal funding it receives does not outweigh the harm to the government and the public interest. Order, R. 30, PageID#851-52, 856. The court explained that Tennessee "has no basis to force funding from HHS without meeting the obligations upon which the funding is conditioned." *Id.*, PageID#857.

This Court affirmed. The panel explained that, in *Ohio v. Becerra*, 87 F.4th 759, 770-77 (6th Cir. 2023), this Court applied the Supreme Court's decision in *Rust v. Sullivan*, 500 U.S. 173, 184-90 (1991), and held that it is within HHS's authority to require Title X projects to offer pregnant patients neutral, factual information about abortion. *See* Op. 13. Although Tennessee urged that *Rust* and *Ohio* are no longer precedential following *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), the panel emphasized that *Loper Bright* explicitly did not "call into question prior cases that relied on the *Chevron* framework." Op. 14 (quoting *Loper Bright*, 144 S. Ct. at 2273). In the alternative, the panel concluded that "the best reading of" the statute permits HHS's approach. *See* Op. 16. The panel emphasized that the type of counseling and referral required by the rule "is informational only" and "neither recommends nor promotes any particular pregnancy care option," and therefore does not contravene Section 1008's prohibition on funds being used in a program where abortion is a "method of family planning." *Id.*

This Court also held that Tennessee was unlikely to succeed in arguing that the counseling and referral requirements present concerns under the Spending Clause, "agree[ing]" with the Tenth Circuit's resolution of the same issue in *Oklahoma*. Op. 7. Like the Tenth Circuit, this Court explained that "Congress made compliance with HHS's requirements a clear and unambiguous condition of receiving a Title X grant." Op. 9.

Judge Kethledge concurred in part and dissented in part. He agreed with the majority that HHS's requirement of nondirective counseling "likely does not violate [Section] 1008" and likely satisfies the Spending Clause. Op. 29-30 (Kethledge, J., dissenting in part and concurring in the judgment in part). In his view, however, the referral requirement "likely violates" Section 1008. *See* Op. 28 (Kethledge, J., dissenting in part and concurring in the judgment in part).

## ARGUMENT

The "extraordinary procedure" of rehearing en banc is not warranted in this case. 6th Cir. I.O.P. 35(a). The panel's decision is correct and consistent with the Tenth Circuit's recent decision in *Oklahoma v. HHS*, 107 F.4th 1209 (10th Cir. 2024), *emergency application denied*, No. 24A146, 2024 WL 4022552 (U.S. Sept. 3, 2024), addressing a materially identical challenge. Tennessee's petition asks this Court to upset settled law and create a direct conflict between the courts of appeals. The petition for rehearing en banc should be denied.

I.      **The Statutory Authority Issue Does Not Warrant En Banc Review**

**A.**  The panel decision correctly concluded that HHS acted within its statutory authority in declining to issue a continuation Title X award to Tennessee.

First, the panel correctly recognized that Tennessee has not established a likelihood of success on the merits because its statutory authority argument is likely "foreclosed" by *Rust* and *Ohio*.  *See* Op. 15-16.  In *Rust v. Sullivan*, the Supreme Court rejected a challenge to HHS's policy decision to change its prior approach and prohibit abortion counseling and referral, explaining that the Title X statute generally and Section 1008 specifically do not "directly address the issues" of "abortion counseling" or "referral."  500 U.S. 173, 185 (1991).  Addressing the "inverse" policy choice in *Ohio*, *see* Op. 15, this Court recognized that *Rust* stands for the proposition that it must be "permissible for an administration to treat referrals either as falling inside or outside [Section] 1008's prohibition, so long as [HHS] adequately explains its choice," *see Ohio*, 87 F.4th at 772, which HHS had done in its 2021 rule, *see id.* at 773-75.

Tennessee stresses that *Rust* and *Ohio* were decided under *Chevron*, which was overruled by *Loper Bright*.  But as the panel explained, the Supreme Court in *Loper Bright* explicitly did not "call into question prior cases that relied on the *Chevron* framework," and the Court stressed that "[m]ere reliance on *Chevron*" is not an adequate justification to "overrul[e] a statutory precedent."  Op. 14-15 (quoting *Loper Bright*, 144 S. Ct. at 2273).  Tennessee errs in seeking to limit the stare decisis effect of

*Rust* to only the specific 1988 rule that was at issue there. Pet. 7-9. *Rust*'s reasoning that Title X does not "directly address the issues of abortion counseling" or "referral" was necessary to its decision that HHS could permissibly prohibit such counseling or referrals, *see* 500 U.S. at 185, and that interpretation remains subject to "statutory stare decisis despite [the Supreme Court's] change in interpretive methodology," *Loper Bright*, 144 S. Ct. at 2273. This Court, moreover, applied *Rust*'s statutory analysis in *Ohio* to uphold the very regulatory requirement at issue here. *See* Op. 16; *see also, e.g.*, *Lopez v. Garland*, 116 F.4th 1032, 1045 (9th Cir. 2024) (holding that circuit authority applying *Chevron* "remains precedential authority which binds [the panel]" after *Loper Bright*). Accepting Tennessee's arguments would invite litigants to "rehash or relitigate previously settled issues decided on *Chevron*"—exactly what the Supreme Court took pains to caution against. *See* Op. 15-16.

Second, and in any event, the panel addressed only whether Tennessee is entitled to a preliminary injunction, and it acknowledged that its analysis is "tentative" in this preliminary posture. Op. 16. The panel's decision therefore does not pretermit consideration of *Loper Bright*'s import in the various cases pending in this Circuit where that issue has been raised. Pet. 9-11 & n.2. The panel held in the alternative, moreover, that HHS's interpretation likely represents "the best reading" of Section 1008, even if *Rust* and *Ohio* were not controlling. Op. 16. As the panel explained, merely "[r]equiring grantees" to provide pregnant patients the opportunity to receive nondirective counseling about all options and to "follow up" with factual

information about a healthcare provider if a patient requests such information does not "recommend[]" or "promote[] any particular pregnancy care option," and does not transform a Title X program into one that "offers abortion as a 'method of family planning.'" *Id.* That is particularly so given that grantees may satisfy the counseling and referral requirements merely by "providing patients with a hotline number." *Id.* But to the extent this litigation continues in district court, Tennessee is free to present its contrary arguments, and a panel of this Court may later address those arguments in an appeal from the district court's final judgment, if necessary.

Indeed, this preliminary-injunction appeal proceeded on an expedited schedule designed "to preserve Tennessee's ability" to "access its 2024 Title X allocation" if Tennessee prevailed before the panel. Mot. to Expedite 6 (Mar. 15, 2024). Following the panel's decision, and after the date passed that HHS voluntarily agreed to reserve funds for Tennessee, HHS allocated the funds to another entity. There is no basis to grant en banc review in this posture over funds that have now been reallocated.

En banc rehearing would be especially unjustified given that the central relief that Tennessee seeks—an order requiring that HHS "reinstate" its Title X award— would be unavailable even under the dissent's interpretation of the statute. *See* Compl., R. 1, PageID#31. Although Judge Kethledge dissented in part, he agreed that Section 1008 permits HHS's nondirective counseling requirement, as every other appellate judge to consider the issue has also concluded. *See* Op. 28-30 (Kethledge, J., dissenting in part and concurring in the judgment in part); *see also* Op. 13-17 (majority

opinion); *Oklahoma*, 107 F.4th at 1225-26; *id.* at 1232 n.4 (Federico, J., dissenting). Tennessee's failure to comply with that regulatory requirement was itself a sufficient reason for HHS to decline to issue a continuation award.

## II.    The Spending Clause Issue Does Not Warrant En Banc Review

**A.**  The panel also correctly rejected Tennessee's invocation of Spending Clause doctrine. Op. 7-12.  None of the three judges on the panel—and none of the three Tenth Circuit judges who decided the parallel *Oklahoma* case—accepted the Spending Clause arguments that Tennessee renews in its rehearing petition. *See* Op. 23; Op. 30 (Kethledge, J., dissenting in part and concurring in the judgment in part); *Oklahoma*, 107 F.4th at 1217-20; id. at 1232 n.4 (Federico, J., dissenting).

The Spending Clause authorizes Congress to "lay and collect Taxes" to provide for the "general Welfare of the United States."  U.S. Const. art. I, § 8, cl. 1.  Pursuant to that authority, Congress has "broad power" to "set the terms on which it disburses federal funds." *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 216 (2022). Congress has "repeatedly employed" that power "by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives." *South Dakota v. Dole*, 483 U.S. 203, 206 (1987) (quotation marks omitted).

As the panel explained, "Congress made compliance with HHS's requirements a clear and unambiguous condition of receiving a Title X grant."  Op. 9.  Under the statute, HHS is authorized to issue grants for the establishment of projects that offer voluntary family-planning services. *See* 42 U.S.C. § 300(a).  Grants shall "be made in

10

accordance with such regulations as [HHS] may promulgate," *id.* § 300a-4(a), with payment "subject to such conditions as [HHS] may determine to be appropriate to assure that such grants will be effectively utilized for the purposes for which made," *id.* § 300a-4(b). This plain language provided "clear notice" that Tennessee would need to follow applicable HHS regulations, including the counseling and referral requirements, and enabled Tennessee to "exercise [its] choice" to accept Title X funds "knowingly, cognizant of the consequences of [its] participation" in the program. *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17, 25 (1981). Tennessee has applied for and accepted Title X funds for decades without suggesting any lack of clarity that compliance with HHS regulations is a condition of its grant. *See* Op. 11.

The panel also correctly recognized that Tennessee's view that Congress must enumerate every condition of the Title X program in the statute itself cannot be reconciled with binding precedent. *See* Op. 8-9. The Supreme Court has long held that Congress may leave the particulars of implementing a spending program through "regulations" and "other guidelines" to the agency charged with administering the program. *Bennett v. Kentucky Dep't of Educ.*, 470 U.S. 656, 670 (1985). In *Biden v. Missouri*, 595 U.S. 87 (2022) (per curiam), for example, the Court addressed a provision authorizing the agency "to promulgate, as a condition of a facility's participation in the [Medicare and Medicaid] programs, such 'requirements as [the agency] finds necessary in the interest of the health and safety of [patients].'" *Id.* at 90 (quoting 42 U.S.C. § 1395x(e)(9)). A group of States objected that they could not be

11

subjected to a spending condition that was not articulated in the statute. *See* Response to Application for a Stay at 23-24, *Missouri*, 595 U.S. 87 (No. 21A240), 2021 WL 8946189, at *23-24. The Supreme Court disagreed, explaining that the agency has properly "established long lists of detailed conditions with which facilities must comply to be eligible to receive Medicare and Medicaid funds" and is not limited to issuing "bureaucratic rules regarding the technical administration of" the programs. *Missouri*, 595 U.S. at 90, 94.

Tennessee's Spending Clause arguments would radically alter Title X and countless other federal spending programs requiring compliance with regulations as a grant condition.[1] Like the Tenth Circuit, this Court correctly rejected the invitation to upend this familiar form of legislation that the Supreme Court has endorsed as a routine exercise of the spending power.

**B.** Tennessee does not contend that this Court's Spending Clause analysis conflicts with any other decision addressing Title X or HHS's counseling and referral requirements. To the contrary, as Tennessee concedes (Pet. 13), the only other circuit to have addressed the issue is the Tenth Circuit, which rejected materially identical

---

[1] *See, e.g.*, 42 U.S.C. § 254b(k)(3)(N) (requiring health center grantees to comply with "applicable Federal statutes, regulations, and the terms and conditions of the Federal award"); *id.* § 1793(f)(2) (providing grants for school breakfast program that "shall be carried out in accordance with applicable nutritional guidelines and regulations issued by the Secretary"); 49 U.S.C. § 5309(c)(4) (stating that transit grants "shall be subject to all terms, conditions, requirements, and provisions that the Secretary determines to be necessary or appropriate").

Spending Clause claims. *See Oklahoma*, 107 F.4th at 1217-20. Lacking any plausible claim of a square circuit conflict, Tennessee asserts (Pet. 13-15) that this Court's Spending Clause analysis is inconsistent with various statements made by courts of appeals addressing different statutory schemes. But as this Court recognized, the statutes at issue in those cases differed from Title X in material respects. *See* Op. 9-10.

Tennessee cites cases from this Court and the Fifth and Eleventh Circuits holding that a statutory funding condition placed on the States' expenditure of COVID-19 stimulus funds was not ascertainable. *See Texas v. Yellen*, 105 F.4th 755, 771-73 (5th Cir. 2024); *West Virginia ex rel. Morrisey v. U.S. Dep't of Treasury*, 59 F.4th 1124, 1140 (11th Cir. 2023); *Kentucky v. Yellen*, 54 F.4th 325, 354 (6th Cir. 2022). Although the statute allowed the Treasury Department "to issue such regulations as may be necessary or appropriate to carry out th[e] section," 42 U.S.C. § 802(f), it did not expressly state that federal grants were subject to the conditions prescribed by the regulations. In contrast, Title X "clearly instruct[s]" HHS to establish requirements to receive funding. Op. 10. Those cases cast no doubt on Congress's authority to delegate to an agency the power to establish conditions on federal funds, so long as Congress speaks with sufficient clarity for funding recipients to understand that they are obligated to comply with the conditions fixed by the agency. Indeed, both *Kentucky* and *West Virginia* explicitly recognize that where Congress has articulated an ascertainable condition, agencies can permissibly elaborate its content. *See West Virginia*, 59 F.4th at 1148 ("[W]e do not question an agency's authority to fill in gaps

that may exist in a spending condition."); *Kentucky*, 54 F.4th at 353-54 (discussing prior cases that approve this practice).

The statutes at issue in Tennessee's other cases are similarly far afield. In one case, Congress had "not delegated authority to the Executive to condition new grants on compliance" with certain requirements at all. *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1233 (9th Cir. 2018). Others involved circumstances where the statute "only implicitly condition[ed] the receipt of federal funding on the fulfillment of certain conditions," *Virginia Dep't of Educ. v. Riley*, 106 F.3d 559, 561 (4th Cir. 1997) (per curiam), or where the regulations sought to "clarify what the statute may have left ambiguous" in the context of a waiver of sovereign immunity, *Texas Educ. Agency v. U.S. Dep't of Educ.*, 992 F.3d 350, 361 (5th Cir. 2021). Those situations are fundamentally different than the one at issue here. Congress stated in no uncertain terms that Title X grants are subject to conditions set by HHS and Tennessee had "clear notice" that it needed to comply with the counseling and referral requirements as part of its grant. Op. 11.

Tennessee makes the unfounded claim that the panel decision will have "sweeping implications" for "state sovereignty and our constitutional structure." Pet. 15-16. HHS's counseling and referral requirements, however, conform to congressional directives and apply only to the family-planning projects that are established by States and other entities with Title X funds. If Tennessee no longer wishes to comply with these requirements, it is free to "decline the funds" and not

participate in the Title X program. *Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214 (2013); *see also Rust*, 500 U.S. at 199 n.5 (recognizing that entities are "in no way compelled to operate a Title X project; to avoid the force of the regulations, [they] can simply decline the subsidy").

## CONCLUSION

For the foregoing reasons, the petition for rehearing en banc should be denied.

Respectfully submitted,

BRIAN M. BOYNTON
 *Principal Deputy Assistant Attorney*
  *General*

FRANCIS. M. HAMILTON III
 *United States Attorney*

MICHAEL S. RAAB
 *s/ Courtney L. Dixon*
COURTNEY L. DIXON
BRIAN J. SPRINGER
 *Attorneys, Appellate Staff*
 *Civil Division, Room 7246*
 *U.S. Department of Justice*
 *950 Pennsylvania Avenue NW*
 *Washington, DC 20530*
 *(202) 353-8189*
 *courtney.l.dixon@usdoj.gov*

November 2024

15

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 40(a)(3), (b)(1) because it contains 3,684 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Courtney L. Dixon*
Courtney L. Dixon

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2024, I electronically filed the foregoing opposition with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system.

*s/ Courtney L. Dixon*
Courtney L. Dixon