No. 24-5220

_____

# In the United States Court of Appeals
# For the Sixth Circuit

_____

**STATE OF TENNESSEE,**

*Plaintiff–Appellant–Petitioner*,

**v.**

**XAVIER BECERRA, ET AL.,**

*Defendants–Appellees–Respondents*.

_____

On Appeal from the United States District Court for the Eastern District of Tennessee, 3:23-cv-384-TRM-jem

_____

**BRIEF OF *AMICUS CURIAE* CENTER FOR ENVIRONMENTAL ACCOUNTABILITY IN SUPPORT OF PETITIONER**

_____

Michael Buschbacher
James R. Conde
  *Counsel of Record*
Andrew W. Smith
Adam Chan
BOYDEN GRAY PLLC
800 Connecticut Avenue NW
Suite 900
Washington, DC 20006
202-955-0620
jconde@boydengray.com

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 24-5220 _____    Case Name: Tennessee v. Becerra, et al. _____

Name of counsel: James R. Conde _____

Pursuant to 6th Cir. R. 26.1, amicus curiae Center for Environmental Accountability _____
Name of Party

makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

CERTIFICATE OF SERVICE

I certify that on _____ October 16, 2024, _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/James R. Conde _____
_____
_____

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

# TABLE OF CONTENTS

TABLE OF CONTENTS ...............................................................................ii

TABLE OF AUTHORITIES.......................................................................iii

INTEREST OF *AMICUS CURIAE*..........................................................vi

INTRODUCTION...................................................................................... 1

LEGAL BACKGROUND ......................................................................... 2

ARGUMENT .............................................................................................. 4

    I.    The Panel Decision Conflicts with *Loper Bright* ................... 4

        A.   *Rust* Does Not Control ................................................. 5

        B.   *Ohio* Does Not Control ................................................. 6

    II.   The Panel Decision Is Exceptionally Important ................... 9

CONCLUSION ....................................................................................... 12

CERTIFICATE OF COMPLIANCE....................................................... 14

CERTIFICATE OF SERVICE................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
  467 U.S. 837 (1984) ................................................................. 10

*Entergy Corp. v. Riverkeeper, Inc.*,
  556 U.S. 208 (2009) ................................................................. 11

*Issa v. Bradshaw*,
  910 F.3d 872 (6th Cir. 2018) .................................................. 11

*Kennedy v. Bremerton Sch. Dist.*,
  597 U.S. 507 (2022) ................................................................... 7

*Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*,
  341 F.3d 987 (9th Cir. 2002) (en banc) .................................... 8

*Loper Bright Enterprises v. Raimondo*,
  144 S. Ct. 2244 (2024) ............................................ vi, 1, 2, 5, 7, 9, 10

*In re MCP No. 185*,
  No. 24-7000, 2024 WL 3650468 (6th Cir. Aug. 1, 2024) ...................... 9

*Mitts v. Bagley*,
  626 F.3d 366 (6th Cir. 2010) .................................................. 11

*Mozilla Corp. v. FCC*,
  940 F.3d 1 (D.C. Cir. 2019) ...................................................... 9

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*,
  551 U.S. 644 (2007) ................................................................. 11

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*,
  545 U.S. 967 (2005) ................................................................... 9

*Nat'l Republican Senatorial Comm. v. Fed. Elec Comm'n*,
No. 24-3051, 2024 WL 4052976 (6th Cir. Sept. 5, 2024) (en banc) ........................................................................... 6

*Ohio v. Becerra*,
87 F.4th 759 (6th Cir. 2023) ...................................... 4, 6, 7

*Rust v. Sullivan*,
500 U.S. 173 (1991) ..................................................... 3, 4, 5

*The Ne. Ohio Coal. for the Homeless v. Husted*,
831 F.3d 686 (6th Cir. 2016) ............................................. 6

*United States Telecom Ass'n v. FCC*,
825 F.3d 674 (D.C. Cir. 2016) ........................................... 9

*United States v. Blackie*,
548 F.3d 395 (6th Cir. 2008) ........................................... 12

*Wright v. Spaulding*,
939 F.3d 695 (6th Cir. 2019) ............................................. 8

## STATUTES

42 U.S.C. § 300(a) ............................................................... 3

42 U.S.C. § 300 *et seq.* ...................................................... 2

42 U.S.C. § 300a-6 ............................................................... 3

## OTHER AUTHORITIES

42 C.F.R. § 59.5(a)(5)(i)(C), (ii) ........................................ 4

42 C.F.R. § 59.8(a)(1) (1989) ............................................ 3

86 Fed. Reg. 56,144 (Oct. 7, 2021) ................................... 4

Bryan A. Garner, *The Law of Judicial Precedent* (2016) ........................ 7

Fed. R. App. P. 35(a)(2) ...................................................... 9

iv

Kent Barnett & Christopher J. Walker, Chevron *in the Circuit Courts*, 116 Mich. L. Rev. 1, 35 (2017) ............................. 10, 11

## INTEREST OF *AMICUS CURIAE*[1]

The Center for Environmental Accountability ("CEA") is a non-profit organization dedicated to promoting transparency and accountability in environmental and energy policy, including accountability to law. CEA has no position on the best reading of the statute in question, but it has a strong interest in ensuring that the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), is faithfully applied.

---

[1] No party's counsel authored this brief in whole or in part, and no one other than *amicus* contributed money intended to fund preparing or submitting the brief.

# INTRODUCTION

Under *Chevron*, courts reviewed agency interpretations in two steps. *Loper Bright*, 144 S. Ct. at 2264. First, a court would ask whether Congress "ha[d] directly spoken to the precise question at issue," and follow the law as written when the law was "clear." *Id.* (quotation omitted). Second, if "the statute [was] silent or ambiguous with respect to the specific issue," a court "had to set aside the traditional interpretive tools and defer to the agency if it had offered a permissible construction of the statute," even if the agency's reading of the statute was not "the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Id.* (quotation omitted). In other words, when the statute was unclear, judges had to defer to the executive on questions of legal interpretation.

*Loper Bright* "places a tombstone on *Chevron* no one can miss." *Id.* at 2275 (Gorsuch, J., concurring). Remarkably, however, the panel decision whistles past the grave. It treats *Chevron*-era precedent as binding, misapplying the Supreme Court's instructions. Although *Loper Bright* instructs lower courts to follow Supreme Court "holdings" that "*specific agency actions* are lawful," lower courts must follow *Loper Bright*, not

1

circuit-level precedent based upon *Chevron*. *Id.* at 2273 (emphasis added). Doing otherwise, as the panel did, defies *Loper Bright*. *See* Op. 25–27 (Kethledge, J., dissenting in part, concurring in the judgment in part).

The panel decision's misunderstanding of *Loper Bright* warrants review by the full Court. Given the dozens of Supreme Court decisions and countless circuit-level decisions that reached "step two" of *Chevron* over the last forty years, the panel decision will ensure that *Chevron*, and its "byzantine set of preconditions and exceptions," *id.* at 2269, remains a regular part of this Court's jurisprudence. The decision's muddled reasoning will also puzzle judges and the public for years to come, while inspiring further executive overreach. The full Court should step in now to maintain consistency with Supreme Court precedent: *Loper Bright*, not *Chevron*.

## LEGAL BACKGROUND

This case involves a legal dispute about the meaning of Title X of the Public Health Service Act. 42 U.S.C. § 300 *et seq.* Title X authorizes the Secretary of the Department of Health and Human Services "to make grants … and to enter into contracts" to fund "voluntary family planning

projects which shall offer a broad range of acceptable and effective family planning methods and services." *Id.* § 300(a). But in Section 1008, the statute provides that "[n]one of the funds appropriated under this subchapter shall be used in programs where abortion is a method of family planning." *Id.* § 300a-6. The "threshold issue" is: who decides what this means in a case or controversy? The Secretary, or an Article III judge? Op. 24 (Kethledge, J., dissenting in part, concurring in the judgment in part).

For decades, the answer has been the Secretary, and grantees have been subject to regulatory whiplash with changing presidential administrations.

In 1988, the Secretary *prohibited* grantees from counseling their patients on abortion or referring patients for an abortion. 42 C.F.R. § 59.8(a)(1) (1989). The Supreme Court upheld that rule in *Rust v. Sullivan*, 500 U.S. 173 (1991). *Rust*, however, was "a *Chevron* case down to its bones." Op. 24 (Kethledge, J., dissenting in part, concurring in the judgment in part). Citing *Chevron*, the Court did "not dwell on the plain language of the statute because … the language is ambiguous." *Rust,* 500 U.S. at 184. The Court said that the Secretary followed a "reasoned

analysis," and so the Court "must defer to the Secretary's permissible construction of the statute." *Id.* at 187.

Since *Rust*, the rules have changed several times. *See Ohio v. Becerra*, 87 F.4th 759, 765–67 (6th Cir. 2023). The latest flip-flop came in 2021. 86 Fed. Reg. 56,144 (Oct. 7, 2021). In that rule, the Secretary mandates what the Secretary prohibited in 1988: grantees must provide counseling on "pregnancy termination" (i.e., abortion), and refer patients for an abortion upon request. 42 C.F.R. § 59.5(a)(5)(i)(C), (ii). In *Ohio*, this Court upheld the rule because under *Rust*'s then-binding *Chevron* analysis, the "question is not whether this is the best interpretation of § 1008, only whether it is an impermissible one. We cannot say that it is." *Ohio*, 87 F.4th at 772.

## ARGUMENT

## I.   THE PANEL DECISION CONFLICTS WITH *LOPER BRIGHT*

While this appeal was pending, the Supreme Court overruled *Chevron*. That means two things here. First, the reasoning of *Rust* no longer controls. Second, *Ohio* has been abrogated. The panel decision misses both points.

## A.    *Rust* Does Not Control

*Loper Bright* gives lower courts clear instructions for applying *Chevron*-era Supreme Court precedent after *Chevron*. The precedential effect of past Supreme Court *Chevron* step two cases is limited to "holdings" that "*specific agency actions* are lawful." 144 S. Ct. at 2273 (emphasis added). For instance, the "Clean Air Act holding of *Chevron* itself"—that EPA's 1981 regulation adopting a plantwide definition of "stationary source" was lawful—remains "subject to statutory stare decisis." *Id.* EPA would not get judicial deference now if it decided to require a permit for each smokestack within a plant. The only way for EPA to justify that change today would be to follow the "single, best meaning" of "stationary source." *Id.* at 2266.

Applying *Loper Bright*'s clear instructions, *Rust* doesn't govern this case. *Rust*'s surviving "holding" is that one "specific agency action"—the 1988 regulation—is "lawful." 500 U.S. at 179. This case involves a challenge to the opposite rule—the 2021 rule commanding what the rule in *Rust* prohibited: counseling and referrals on abortion. So, *Rust* doesn't help the Secretary.

The panel decision nevertheless concludes that "abandoning *Rust* … based on [its] reliance on *Chevron*, is unwarranted." Op. 15. That conclusion is mystifying. By overruling *Chevron*, the Supreme Court has made crystal clear that *Rust*'s analysis is *not* good law: only the holding that the 1988 rule was valid remains. There is no *Rust* deference. There *was Chevron* deference. And with *Chevron* gone, *Rust*'s deferential reasoning is gone too. The panel decision's contrary suggestion is both wrong and confusing.

## B.    *Ohio* Does Not Control

*Ohio* involved the same 2021 rule. *Cf.* Op. 14. But *Loper Bright* has entirely "undermined" *Ohio*'s reasoning, so *Ohio* has been abrogated. *The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 720 (6th Cir. 2016).

*Ohio* faithfully applied the *Chevron*-deference framework that "remain[ed] standing" at the time. *Nat'l Republican Senatorial Comm. v. Fed. Elec Comm'n*, No. 24-3051, 2024 WL 4052976, at *4 (6th Cir. Sept. 5, 2024) (en banc). The Court acknowledged the "odd spot" it found itself in—bound to follow the reasoning of *Chevron* and *Rust*, while aware that doctrine may not be around for long. 87 F.4th at 769. The Court took as

6

its "starting point" *Rust*'s conclusion that section 1008 was ambiguous. *Id.* at 770. The Court therefore upheld the regulation as reasonable under step two of *Chevron*, while noting that it could not answer "whether this is the best interpretation of section 1008." *Id.* at 772.

That reasoning has been entirely undermined by later precedent. Now, "[c]ourts must exercise their independent judgment in deciding whether an agency acted within its statutory authority." *Loper Bright*, 144 S. Ct. at 2273. Courts "may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Id.* Thus, a circuit-level decision such as *Ohio* that defers to an agency's interpretation under step two, without ever deciding the best reading of the statute, is no longer be binding, let alone "persuasive," as the panel decision confusingly suggests. Op. 14 & n.7.

Once the Supreme Court "abandon[s]" a governing "test," lower courts "err" by continuing to follow circuit precent applying the test. *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 534–36 (2022); Bryan A. Garner, *The Law of Judicial Precedent* 31 (2016) ("What happens when the Supreme Court overturns the standard that it had previously used to

resolve a particular class of cases? Are the results of prior cases reached under the old standard still binding precedent? The answer is no.").

Although the panel decision's reasoning is unclear, the panel may have mistakenly taken *Loper Bright*'s instructions about statutory precedent as equally applicable to circuit-level precedent. The panel decision asserts that "[u]nremarked upon [in *Loper Bright*] was whether statutory stare decisis includes circuit precedent." Op. 14. But unless the Supreme Court *expressly* says otherwise, circuit courts should adhere to Supreme Court precedent, not "abrogated" panel precedent. *Wright v. Spaulding*, 939 F.3d 695, 700 (6th Cir. 2019). No Supreme Court "remark" is necessary, because the Supreme Court assumes that circuit courts will adhere to its decisions over circuit precedent. The Court was therefore wrong to hold that "abandoning … *Ohio* based on [its] reliance on *Chevron*, is unwarranted." Op. 15.[2]

---

[2] In any event, *Ohio* wouldn't bind the full Court en banc. *Cf. Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 995 (9th Cir. 2002) (en banc). The question would be whether *Rust*'s reasoning still controls, and the answer is no. *See supra* I.A.

## II.    THE PANEL DECISION IS EXCEPTIONALLY IMPORTANT

This case involves a "question of exceptional importance." Fed. R. App. P. 35(a)(2). The panel decision licenses a continuation of *Chevron* deference. On one reading, any statute that either the Supreme Court or this Court has said is ambiguous under *Chevron* continues to implicitly delegate to agencies the authority to flip-flop into new binding interpretations.

That would perpetuate one of *Chevron*'s "wors[t]" features: constant executive flip flops. *Loper Bright*, 144 S. Ct. at 2265. For example, the Supreme Court has held that the Communications Act is ambiguous on whether broadband providers are a "telecommunications service" subject to common carrier rules, and deferred to the FCC's view. *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 1000 (2005) ("*Brand X*"). On the panel's theory, this Court would have to "accede" to the reasoning of *Brand X* and thus defer to the ephemeral view of the latest FCC political appointees. *Compare United States Telecom Ass'n v. FCC*, 825 F.3d 674, 704 (D.C. Cir. 2016) (deferring to FCC), *and Mozilla Corp. v. FCC*, 940 F.3d 1, 18 (D.C. Cir. 2019) ("Once again, the Commission has switched its tack."), *with In re MCP No. 185*, No. 24-7000, 2024

WL 3650468, at *5 (6th Cir. Aug. 1, 2024) (Sutton, C.J., concurring) (following "the best reading of the" Communications Act instead).

There is no shortage of *Chevron* step two cases. The U.S. Solicitor General identified 70 "*Chevron* cases" issued by the Supreme Court during the forty years of *Chevron*'s era. Brief for the Respondents 68a–72a, *Loper Bright*, 144 S. Ct. 2244. Because the panel appears to "accede" to circuit precedent too, the possibilities are endless. One study estimated that 70 percent of the 1,186 circuit court decisions applying *Chevron* between 2003 and 2013 reached step two, so the panel decision's reasoning would implicate numerous statutory provisions. Kent Barnett & Christopher J. Walker, Chevron *in the Circuit Courts*, 116 Mich. L. Rev. 1, 35 (2017).

The consequences would be especially felt in environmental law, where *Chevron* deference has frequently been applied. For instance, EPA could replace the plantwide "bubble concept" with individual smokestack permits, and receive judicial deference. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 859–66 (1984). The same logic would apply to other environmental statutes where the Supreme Court has

reached step two.[3] And under the panel decision, deference would apply to dozens of provisions in environmental statutes that have been construed as ambiguous in numerous circuit-level decisions over forty years. *See* Barnett & Walker, *supra*, at 27–28 ("environment" the most frequent issue after immigration); *see also id.* 55 (*Chevron* applied in 90% of EPA cases). In short, the panel decision will matter in a large "number of cases," including environmental cases. *Issa v. Bradshaw*, 910 F.3d 872, 877 (6th Cir. 2018) (Sutton, C.J., concurring in denial of en banc review).

Rehearing is also urgently needed to "produce consistent and principled circuit law." *Mitts v. Bagley*, 626 F.3d 366, 370 (6th Cir. 2010) (Sutton, C.J., concurring in the denial of en banc review). The panel acknowledges that *Loper Bright* was "not addressed by the parties in their briefing."[4] Op. 14. But that counsels *against* "taking sides on how to approach this question … until the issue has been raised by the parties, it has been

---

[3] *See, e.g., Nat'l Ass'n of Home Builders v. Defs. Of Wildlife*, 551 U.S. 644, 664–69 (2007) (upholding rule providing that ESA consultation is unnecessary at step two of *Chevron*); *Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208, 218 (2009) (upholding rule allowing agency to consider cost-benefit when setting standard for power plant cooling water intake structures).

[4] Tennessee requested supplemental briefing. *See* ECF No. 44, at 2.

briefed and it makes a difference to the outcome of the case." *United States v. Blackie*, 548 F.3d 395, 404 (6th Cir. 2008) (Sutton, C.J., concurring). The panel decision nevertheless goes out of its way to conclude that "abandoning *Rust* and *Ohio* based on their reliance on *Chevron*, is unwarranted." Op. 15. The Court should not settle the continued viability of *Chevron*-based precedent without briefing.

Lack of briefing may explain the panel decision's shambolic reasoning. The panel decision at one point suggests that *Ohio* should not receive weight as precedent because it was decided under step two of *Chevron*. Op. 14 & n.7. But then why "accede" to *Ohio*'s holding and affirm its "precedential effect"? *Id.* at 15. Similarly, the panel decision correctly admits that the "specific agency action" in *Rust* that is subject to statutory stare decisis was the 1988 rule, not the 2021 rule, but the panel "accede[s]" to the holding of *Rust* anyway. *Id.* Judges in this circuit will have to make sense of this muddled reasoning if the decision stands. They will struggle.

## <u>CONCLUSION</u>

The Court should grant rehearing.

Dated: October 16, 2024

Respectfully submitted,

<u>/s/ James R. Conde</u>
Michael Buschbacher
James R. Conde
  *Counsel of Record*
Andrew W. Smith
Adam Chan
BOYDEN GRAY PLLC
800 Connecticut Avenue NW
Suite 900
Washington, DC 20006
202-955-0620
jconde@boydengray.com

*Counsel for Amicus Curiae Center for Environmental Accountability*

13

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned certifies that this brief:

(i)    complies with the type-volume limitation in Federal Rule of Appellate Procedure 29(a)(5) because it contains 2,414 words; and

(ii)    complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Century Schoolbook.

Dated: October 16, 2024                     /s/ James R. Conde
                                             James R. Conde

**CERTIFICATE OF SERVICE**

I hereby certify that on October 16, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system. I further certify that all parties in this case are represented by counsel who are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: October 16, 2024                    /s/ James R. Conde
                                           James R. Conde